Peter **YING** and Wong Chai Liang, Appellants,

v.

**Robert F. KENNEDY,** Attorney General of the United States, Appellee.

No. 15696.

United States Court of Appeals District of Columbia Circuit.

Argued March 16, 1961.

Decided April 27, 1961.

Petition for Rehearing Denied June 2, 1961.

Mr. David Carliner, Washington, D. C., with whom Mr. Jack Wasserman,

Washington, D. C., was on the brief, for appellants.

Mr. Abbott A. Leban, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, PHILLIPS, Senior Circuit Judge for the Tenth Circuit,* and DANAHER, Circuit Judge.

PHILLIPS, Circuit Judge.

Ying and Liang, hereinafter called the aliens, are citizens and nationals of China. They entered the United States lawfully as crewmen, but became unlawfully within the United States by reason of having overstayed their shore leave. Deportation proceedings were instituted against each of them and in each proceeding an order was entered that the alien "be deported from the United States in the manner provided by law."

The Liang order was entered July 17, 1958, and on the same day a warrant was issued for the arrest and deportation of Liang. The Ying order was entered on April 30, 1959, and on the same day a warrant was issued for the arrest and deportation of Ying. Neither warrant specified the country to which deportation should be made. Each commanded that the alien should be taken "into custody" and deported "pursuant to law."

The regularity of the proceedings, the fact that each alien is deportable, and the validity and finality of the orders of deportation are admitted. Relief is sought here only on the grounds (1) that the warrants are invalid because they failed to designate the country of deportation, and (2) that Hong Kong, which was designated as the country of deportation, is not a country within the meaning of the Immigration and Nationality Act (1952), 66 Stat. 163.[1]

Neither alien exercised his privilege under § 243(a) of the Act, 8 U.S.C.A.

1. Hereinafter called the Act.

§ 1253(a), to designate the country to which the Attorney General should direct his deportation.

Absent a prompt exercise by an alien of his right to designate a country to which his deportation shall be directed, it becomes the duty of the Attorney General under § 243(a) of the Act to direct deportation "to any country of which" the "alien is a subject national, or citizen if such country is willing to accept him into its territory." If the government of such country does not advise, within three months following the date of original inquiry or within such future period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether it will or will not accept the alien into its territory, then it becomes the duty of the Attorney General under § 243(a) of the Act in his discretion and without priority or preference because of the order they are set out in such Section, to direct deportation of the alien "to the country": (1) from which he last entered the United States; (2) in which is located the foreign port at which he embarked for the United States; (3) in which he was born; (4) in which the place of his birth is situated at the time he is ordered deported; (5) which had sovereignty over his birth place at the time of his birth; or (6) to any country in which he resided prior to entering the country from which he entered the United States; "or" (7) "if deportation to any of the foregoing places or countries is impracticable, inadvisable or impossible, then to any country which is willing to accept such alien into its territory."

On October 9, 1959, Ying was served with a notice which stated, "pursuant to the order of deportation in your case and Section 243 of the Immigration and Nationality Act, your deportation to Hong Kong has·been directed." A like notice stating that his deportation to Hong Kong had been directed was served on Liang, but the record does not show the date of that notice.

On September 2, 1959, Notice Form I–166 was served upon Liang and on October 9, 1959, it was served on Ying. The Ying notice stated that arrangements had been made for his deportation to Hong Kong on October 22, 1959, and directed him to report at a designated time and place completely ready for deportation. The Liang notice stated that arrangements had been made for his deportation to Hong Kong on September 18, 1959, and directed him to report at a designated time and place completely ready for deportation.

Hong Kong, a British Crown Colony, is the place from which each alien entered the United States and the British Consul General in San Francisco, prior to the issuance of the notices above referred to, had advised the Attorney General that the authorities in Hong Kong had agreed to accept each of such aliens as deportees.

The aliens instituted a declaratory judgment action seeking an adjudication (1) that Hong Kong was not "a country" within the meaning of § 243(a) of the Act, and (2) that each warrant of deportation was invalid because it failed to designate the country to which the alien named therein was to be deported. Summary judgment was entered in favor of the Attorney General and the aliens have appealed.

I. Were the warrants defective because they failed to state the country to which the alien was to be deported? The aliens rely upon Ex parte Yabucanin, D.C.Mont., 199 F. 365 and Ex parte Callow, D.C.Colo., 240 F. 212. Those cases held that a warrant which failed to state the country to which deportation was to be made was defective. However, those cases were decided under the Immigration Act of February 20, 1907, 34 Stat. 898. Under that Act deportation of an alien was to be only "to the country whence he came" and the Act specifically provided for a warrant for the arrest and deportation of the alien, to be issued by the Secretary of Commerce and Labor. The Act which governs the present proceeding makes no provision

for a warrant of deportation.[2] Rather, § 242(c) of the Act provides for a final order of deportation.

The applicable regulations do provide for a warrant of deportation to be "based upon the final order of deportation" (8 C.F.R. § 243.1(a)) and under it the alien if not already "in the physical custody of the Service" is taken into custody (8 C.F.R. § 243.3). But neither the Act nor the regulations expressly require either the order or the warrant to designate the country to which the alien is to be deported and for reasons we shall hereinafter undertake to state, neither impliedly so require.

Under the warrant provided for in § 242(a) of the Act, custody of the alien is obtained and thereafter maintained until the final determination of deportability. It has spent its force when the final order of deportation is entered. When such order has been entered, the warrant provided for in the regulations is issued and under it the alien, if not already in physical custody, is taken into custody and thereafter actual or constructive custody of the alien is maintained until the Attorney General has determined the country of deportation and then the alien is deported to such country.

Section 242(c) of the Act provides that the Attorney General shall have a period of six months from the date of the final order of deportation, or, if judicial review is had, from the date of the final order of the court, within which to effect the alien's departure from the United States; and that during such period, at the Attorney General's discretion, the alien may be detained, released on bond, or released on such other condition as the Attorney General may prescribe. And, under § 243(a) of the Act, deportation is not limited as in the 1907 Act to the place whence the alien came, but to one of several countries, namely, a country promptly designated

by the alien, if it is willing to accept him and the Attorney General does not conclude deportation to such country would be prejudicial to the interests of the United States, or a country of which the alien is a native, citizen, subject or national, provided it is willing to accept him, and if to neither of those, one of seven other countries specified in § 243 (a) of the Act, as determined by the Attorney General in his discretion. Thus, it will be seen that the determination of the country of deportation depends upon facts to be ascertained, conclusions to be reached, and decisions to be made by the Attorney General after the final order of deportation has been entered and the warrant of deportation issued.

Since, under the procedures provided for in the Act, the country of deportation is not determined until after the final order of deportation has been entered and the warrant of deportation, provided for in the regulations, has been issued, it must follow that the country of deportation should not, and, indeed, could not be stated in such order or warrant.

In our opinion, the notice given to each alien, which definitely stated the country to which he was to be deported, and the notice given to Liang on September 2, 1959, and to Ying on October 9, 1959, (Form I–166) which again advised each of them of the country to which he was to be deported, and which also stated the time and place each should report for deportation, comported with the procedures intended by and fully met the requirements of the Act; gave to each alien good and sufficient notice of the country to which he was to be deported; and afforded each alien ample time to assert or take steps to protect any claimed right or privilege.

We conclude the warrants were free from defect and valid.

---

2. Section 242(a) of the Act, 8 U.S.C.A. § 1252, provides for a warrant for the arrest and placing in custody of the alien pending final determination of his deportability. Such a warrant precedes the order of deportation and plainly is not a warrant of deportation.

■ II. Is Hong Kong a country within the meaning of that word as used in § 243(a) of the Act? "Country" is not a word of art with a fixed technical meaning. Rather, it is an ambiguous term and its meaning in § 243(a) of the Act must be arrived at by a consideration of the context in which it is found and the purposes of the Act.[3]

The word may describe a state in the international sense, that is, a state having the status of an international person, or "it may mean a foreign government which has authority over a particular area or subject-matter, although not an international person but only a component part, or a political subdivision, of the larger international unit." Burnet v. Chicago Portrait Co., 285 U.S. 1, 5, 52 S.Ct. 275, 277, 76 L.Ed. 587.

Since its cession to Great Britain in 1841, as confirmed by the Treaty of Nanking of 1842, Hong Kong has been a British Crown Colony. It is comprised of the island of Hong Kong, itself, the Kowloon Peninsula on the mainland and certain lesser surrounding islands. It is governed by a royal governor, who is advised by a 12-member executive council and by a 17-member appointive legislature whose procedures follow those of the British House of Commons. We deem it unnecessary to determine the precise distribution of political power between Hong Kong's local and partially autonomous government and that of the United Kingdom. Suffice it to say that Hong Kong has authority to determine whether it will accept a deported alien from the United States. That authority was recognized by the action of the Consul General of Great Britain when he made inquiry of the legal authorities at Hong Kong as to whether they would accept into Hong Kong's territory the aliens to be deported in the instant case.

A primary purpose of the Act was to reduce the number of undeportables by increasing the number of places or countries to which an alien under a final order of deportation might be sent. That purpose is plainly manifest by the language of the Act itself. To hold Hong Kong to be a country within the meaning of § 243(a), supra, will tend to achieve such purpose. To hold otherwise would tend to defeat it.

We conclude that Hong Kong is a country within the meaning of § 243(a). Our conclusion is supported by two recent decisions in the Second Circuit.[4]

The judgment is affirmed.

---

3. Burnet v. Chicago Portrait Co., 285 U.S. 1, 5, 6, 52 S.Ct. 275, 76 L.Ed. 587; Chan Chuen v. Esperdy, 2 Cir., 285 F.2d 353, 354; Rogers v. Cheng Fu Sheng, 108 U.S.App.D.C. 115, 116, 280 F.2d 663,

664, certiorari denied 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187.

4. See Chan Chuen v. Esperdy, 2 Cir., 285 F.2d 353, 354 and Mo Ching Shing v. Murff, D.C.N.Y., 168 F.Supp. 381.