309 F.2d 452
 Peter HOLZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE,* Respondent.
* Under the new statute (Public Law 87-301, 75 Stat. 651, 8
U.S.C. 1105a(a)(3)) actions of this type must be brought
against the Immigration and Naturalization Service as
Respondent. We have, therefore, changed the title of
proceedings in this Court from 'Peter Holz, Petitioner
v.
George Rosenberg, District Director, Immigration and
Naturalization, etc., et al., Respondents' to
'Peter Holz, Petitioner v. Immigration
and Naturalization Service, Respondent'.
 No. 17657.
 United States Court of Appeals Ninth Circuit.
 Nov. 1, 1962.
 
 David C. Marcus, Los Angeles, Cal., for appellant.
 Francis C. Whelan, U.S. Atty., Donald A. Fareed, Asst. U.S. Atty., Chief, Civil Section, James R. Dooley, Asst. U.S. Atty., and Dzintra I. Janavs, Los Angeles, Cal., for appellee.
 Before BARNES and HAMLIN, Circuit Judges, and PLUMMER, District Judge.
 BARNES, Circuit Judge.
 
 
 1
 This is a petition for judicial review of the Immigration and Naturalization Service's (hereinafter referred to as 'respondent') denial of an application for stay of deportation made by Peter Holz (hereinafter referred to as 'petitioner') under Section 243(h) of the Immigration and Nationality Act of 1952 (hereinafter referred to as the 'Act'), 8 U.S.C. 1253(h). The petition had originally been filed in the district court, and it was transferred to this court by an order of the district court pursuant to 5(b) of Public Law 87-301 (75 Stat. 651, 8 U.S.C.A. 1105a(a)).
 
 
 2
 There is no issue relating to the finality of respondent's order of deportation, nor is there an issue relating to the validity of the order. Holz v. Del Guercio, 9 Cir., 1958, 259 F.2d 84.[1] Nor is this a habeas corpus proceeding.
 
 
 3
 Thus, the issue here presented is whether respondent abused its discretion in denying petitioner's application for stay of deportation under 243(h) of the Act. Does this court have jurisdiction to hear petitioner?
 
 
 4
 This court has held that it has jurisdiction to determine if the Attorney General has given an alien procedural due process if the Attorney General purports to act under 243(h). Cakmar v. Hoy, 1959, 265 F.2d 59, 62. But it also seems clear that the Attorney General's decision on an application for stay of deportation under 243(h) is not an administrative proceeding under 242(b) of the Act. Ibid.
 
 
 5
 Here the Attorney General acted under 243(h), but this is not a proceeding under 242(b). Thus, the question is: Though this court has jurisdiction to determine whether an alien was afforded procedural due process when the Attorney General acts as he did here, does this court have original jurisdiction or merely appellate jurisdiction? By transferring the petition to this court, the district court apparently was of the opinion that this court had original jurisdiction. There is, however, no indication that this question was brought specifically to the attention of the district court.
 
 
 6
 The pertinent language in 1105a, as amended by Public Law 87-301 reads:
 
 
 7
 '(a) The procedure prescribed by, and all the provisions of sections 1031-1042 of Title 5, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or comparable provisions of any prior Act, * * *'
 
 
 8
 and:
 
 
 9
 '(c) * * * No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order.'
 
 
 10
 This language states that the procedures set forth in Public Law 87-301 apply only to the judicial review of final orders of deportation issued pursuant to 242(b) of the Act.
 
 
 11
 It might well be argued from the legislative history of Public Law 87-301 (87th Cong., 1st Sess., 1961, U.S.Cong. & Adm. News, pp. 2966-2970), that the purpose of the Law was 'to create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens' and, therefore, this court should assume original jurisdiction of cases such as that which is presently before us. On the other hand, the legislative history refers to judicial review of orders of deportation; not to the judicial review of the entirely different administrative act contained in 243(h).
 
 
 12
 Perhaps Congress would be pleased if this court were to assume jurisdiction in the case at bar. But ours is a court of limited jurisdiction. Congress would not be pleased if this court assumed that which had never been granted. We hold, therefore, that we are required to dismiss the petition on the ground that this court is without jurisdiction. Giova v. Rosenberg, 308 F.2d 347 (9th Cir., decided June 15, 1962, rehearing denied, October 23, 1962), and Mai Kai Fong v. Immigration and Naturalization Service, 9 Cir. 1962, 305 F.2d 239. We must await a clear statement from Congress if it desires this court to hear petitions brought solely under 243(h) of the Act; i.e., to hear petitions such as that here presented under the procedures set forth in Public Law 87-301 when there are no grounds for this court to exercise ancillary jurisdiction. We disagree, in other words, with the holding of the Seventh Circuit in Blagaic v. Flagg, 1962, 304 F.2d 623, and Roumeliotis v. Immigration and Naturalization Service, 1962, 304 F.2d 453, and agree with Zupicich v. Esperdy, S.D.N.Y.1962, 207 F.Supp. 574, and Foti v. Immigration and Naturalization Service, 2 Cir., 308 F.2d 779.
 
 
 13
 But were we to assume this court has jurisdiction, we would reach an equivalent result on the merits. This is because the facts as set forth by petitioner show that respondent has ordered him to be deported to (West) Germany and, because he is a native of Rumania, he fears the German government might, in turn, send him to Rumania. And, contends petitioner, if he is sent to Rumania he will be subjected to physical persecution because of his personal anti-Communistic history. If he were sent to Rumania, petitioner probably would be subjected to physical persecution. But there is no evidence that Germany would send him to Rumania.[2]
 
 
 14
 Petitioner does not fear physical persecution in Germany. Indeed, he had learned his trade there, has been issued a certificate of German citizenship,[3] and was issued a German passport by the German Consulate at Los Angeles on December 4, 1958.
 
 
 15
 We conclude that the record shows that petitioner was given a fair-- and complete-- hearing. As was stated by this court in Kalatjis v. Resenberg, 1962, 305 F.2d 249:
 
 
 16
 'The discretionary powers established by the legislative branch of our government have been duly and properly exercised by those entrusted by law to so exercise them. No power rests in us to interfere, nor can we substitute our discretion for that of the Attorney General, or his lawful delegate.' (at p. 253.)
 
 
 17
 But for the reason hereinbefore stated, the petition is dismissed.
 
 
 
 [1]
 This court there affirmed respondent's final order of deportation. To understand fully the facts of this case, the earlier decision of this court should be read; the facts there set forth are not here reiterated
 
 
 [2]
 Petitioner's speculation on the future course of conduct of foreign governments-- while not to the same degree of acidity-- has a flavor similar to the petitioner's fears in Cakmar v. Hoy, 9 Cir., 265 F.2d 59
 
 
 [3]
 The certificate is dated February 8, 1954. However, petitioner contends that he is no longer a German citizen, alleging that his certificate of German citizenship expired on February 9, 1959. It must be noted, however, that counsel for petitioner stated at the hearing that he was going to obtain information from the German Embassy in Washington showing that petitioner was no longer considered a German citizen. Respondent's Special Inquiry Officer gave petitioner's counsel sixty days to obtain the information; no such information was ever submitted to respondent