**LAM MAN CHI, Lum Hong and Young Sau Yu, Appellants,**

v.

**E. P. BOUCHARD, as District Director for the Immigration and Naturalization Service of New Jersey.**

**No. 13938.**

United States Court of Appeals Third Circuit.

Argued April 6, 1962.

Reargued Nov. 21, 1962.

Decided Feb. 26, 1963.

Abraham Lebenkoff, New York City, for appellants.

Sidney E. Zion, Asst. U. S. Atty., Newark, N. J., for appellee.

Before BIGGS, Chief Judge, McLAUGHLIN, Circuit Judge, and SHERIDAN, District Judge.

BIGGS, Chief Judge.

This is an appeal by three aliens from an order of the court below denying their motion for a preliminary injunction against deportation to Hong Kong.

Chi, Hong and Yu, the plaintiff-appellants, were born on the Chinese mainland when the Chinese Nationalist Government (now situated on Formosa) controlled all China. They were admitted to the United States as crewmen for a period not to exceed twenty-nine days and remained illegally by overstaying their shore leaves. Deportation proceedings under the Immigration and Nationality Act of 1952, § 242, 66 Stat. 208 (1952), 8 U.S.C.A. § 1252 et seq. (1953), were instituted against each of them resulting in orders directing deportation, in warrants of deportation, and finally in notifications that the deportations had been "directed" to be made to Hong Kong.[1] On January 22, 1962, the plaintiffs filed a complaint against the District Director of the Immigration and Naturalization Service in the court below alleging that the proposed deportations to Hong Kong were illegal because the defendant had failed to meet the requirements of § 243 of the Immigration Act of 1952, 8 U.S.C.A. § 1253 (1953),

---

1. The chronology of these events appears to have been as follows:

Yu—December 2, 1959—Order by special inquiry officer directing Yu to be "deported from the United States in the manner provided by law".
December 31, 1959—Issuance of warrant of deportation by District Director (designation unspecified).
February 26, 1960—Notification by Deputy District Director to Yu That, "Pursuant to the order of deportation in your case and Section 24? of the Immigration and National-

ity Act, your deportation to Hong Kong has been directed".

In the case of Chi, identical acts were taken on October 26, 1960, November 9, 1960, and January 17, 1962, respectively. In the case of Hong the acts occurred on October 24, 1960, November 9, 1960 and January 17, 1962, respectively.

These facts appear from certified copies of the records of the Immigration and Naturalization Service which were submitted to us by the defendant without objection from plaintiffs.

*i.e.,* by not inquiring of the "country [Communist China] to which the plaintiffs [allegedly] are subject nationals or citizens" as to whether it would accept them as deportees, before sending them elsewhere. The complaint prayed that the District Director be required to make such inquiry prior to deporting plaintiffs, and that the deportations be restrained pending the outcome of the litigation. The plaintiffs' motion for a preliminary injunction was denied because "the plaintiffs show[ed] no likelihood of success * * * by virtue of the operation of the doctrine of *res judicata* and on the basis of the court's agreement with the reasoning in *Leong Leun Do* v. *Esperdy,* 197 F.Supp. 604 (S.D.N.Y.1961)". The appeal at bar is from the order denying the preliminary injunction. After the appeal was taken, the plaintiffs moved the court below for a stay of deportation pending the disposition of the appeal. It was denied. This court, however, granted a stay.

*In limine* we are confronted with the question whether the court below had jurisdiction to entertain the action. In Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955) it was held that under Section 10 of the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1009 (1950 Supp.), a review could be had in a United States District Court of an order directing the deportation of an alien under the Immigration Act of 1952 by a suit for a declaratory judgment and injunction. This apparently was the theory on which the plaintiffs' action was brought.[2]

Is this theory supportable in view of the Act of September 26, 1961, the "addition" to the Immigration and Nationality Act of 1952, § 106(a), 8 U.S.C.A. § 1105a (a) (1962 Supp.)?[3] Incorporated by reference in the 1961 Act is Section 2 of the Act of December 29, 1950, as amended, 5 U.S.C.A. § 1032 (1961 Supp. Pamph.). Read together they give to the Courts of Appeals exclusive jurisdiction to review "all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 242(b) * * *" of the 1952 Immigration Act, 8 U.S.C.A. 1252 (b). § 106(a), 8 U.S.C.A. § 1105a(a) (1962 Supp.). At the time the suit at bar was filed, the 1961 Act was in effect. See Pub.L. 87–301, § 5(b), 75 Stat. 653 (1961). It follows that if the determinations or directions to deport the plaintiffs to Hong Kong constituted "final orders of deportation * * * made * * * pursuant to administrative proceedings under section 242(b)", then this court and not the court below had jurisdiction to review the determinations or directions. This is the question which we must decide.

At the time when the plaintiffs' deportation proceedings were pending, it was customary for the Immigration Service to make two successive determinations prior to deporting an alien. The first was to decide whether the alien should or should not be deported. This determination was made by a Special Inquiry Officer as provided in § 242(b) of the 1952 Act, 8 U.S.C.A. § 1252(b). If

**2.** The complaint alleges that the District Court has jurisdiction under 8 U.S.C.A. § 2201. Since there is no such section, presumably plaintiffs' counsel had 28 U.S. C.A. § 2201 (1959) in mind. This latter section authorized declaratory judgment actions but conferred no jurisdictions on the district courts and merely made a new remedy available in cases where jurisdiction already existed. Skelly Oil v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Calif. Ass'n of Emp. v. Bldg. & Const. Trades Council, 178 F.2d 175 (9 Cir., 1949). Although Section 10 of the Ad-

ministrative Procedure Act of 1946, 5 U.S.C.A. § 1009 (1950 Supp.), is not referred to in the complaint, we assume that plaintiffs relied on that Section and also on Section 279 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1329 (1953), which conferred jurisdiction on the United States District Courts in all causes relating to the deportation of aliens. Sigurdson v. Del Guercio, 241 F.2d 480, 482 (9 Cir., 1956); Cf. McLeod v. Peterson, 283 F.2d 180, 187–188 (3 Cir., 1960).

**3.** Pub.L. 87–301, § 5(a), 75 Stat. 651 (1961).

deportation was decided upon, there followed an order that "the alien be deported". See 8 C.F.R. § 242.19, prior to the December 19, 1961 amendment promulgated because of the 1961 Act. Then, in accordance with § 243(a) of the 1952 Act, 8 U.S.C.A. § 1253(a), the Immigration Service determined the place to which the alien was to be deported. See 8 C.F.R. § 243.1(b) as it was prior to the December 19, 1961 amendment. The chronologies set forth in Lezos v. Landon, 235 F.2d 581 (9 Cir., 1955); Ying v. Kennedy, 110 U.S.App.D.C. 247, 292 F.2d 740, 742 (1961), cert. den. 368 U.S. 914, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961); and Chao-Ling Wang v. Pilliod, 285 F.2d 517 (7 Cir., 1960), reflect this two-step practice. See also Pedreiro v. Shaughnessy, 213 F.2d 768 (2d Cir., 1954), aff'd 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955).

The proceedings in Yu's case were typical.[4] On December 2, 1959, a hearing was held by a Special Inquiry Officer under 8 U.S.C.A. § 1252(b) "to determine [Yu's] deportability". After the hearing the Special Inquiry Officer entered an order that "[Yu] be deported from the United States in the manner provided by law * * *". As we have stated, the order did not designate the place to which Yu was to be deported. On December 31, 1959, the defendant issued a warrant of deportation commanding any officer or employee of the Immigration Service to "take into custody and deport [Yu] pursuant to law". The warrant did not name the place to which Yu was to be deported.[5] On February 26, 1960, the defendant sent Yu a notice saying "[p]ursuant to the order of de-

portation in your case and Section 243 of the Immigration and Nationality Act [8 U.S.C.A. § 1253], your deportation to Hong Kong has been directed".

The plaintiffs concede that they are deportable, and make no attack on the orders of deportation entered by the Special Inquiry Officer, but they challenge the designation of Hong Kong as the place of deportation without the Immigration Service determining in advance whether Communist China would or would not receive them. Each plaintiff asserts that such an inquiry is required by 8 U.S.C.A. § 1253.

Because the Act of 1961 is of comparatively recent origin, adjudications involving the issue of appealability of orders entered in deportation proceedings in relation to that Act are few in number. We can find only one decision, Mai Kai Fong v. Immigration and Naturalization Service, 305 F.2d 239 (9 Cir., 1962), the facts of which seem similar to those at bar and which involved directly an adjudication of the jurisdictional issue presently before us. In the cited case the Court of Appeals for the Ninth Circuit held, as an alternative ground of decision, that the designation of the place to which an alien should be deported, made subsequent to an order directing deportation, was not a final order of deportation pursuant to § 242(b) of the Immigration Act of 1952, and therefore was not reviewable originally by that Court of Appeals. But the jurisdictional issue with which we are concerned was not discussed. The decision was based by way of analogy on the decision in Giova v. Rosenberg, 308 F.2d 347 (9 Cir., 1962),[6] which had held, without discus-

4. The administrative procedure about to be outlined in this opinion was the same in the case of all plaintiffs, except for dates. See note 1, supra.

While other events also occurred during the administrative proceedings, they are not pertinent to the point presently under consideration.

5. The failure of a warrant of deportation to specify the place to which an alien is to be deported has been held not to affect its validity. Ying v. Kennedy, 110 U.S.

App.D.C. 247, 292 F.2d 740 (1961), cert. den. 368 U.S. 914, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961); United States ex rel. Yip Cheung Fong v. Esperdy, 291 F.2d 676 (2d Cir., 1961); Kokkosis v. Esperdy, 191 F.Supp. 765 (S.D.N.Y.1961); Dai Ming Shih v. Kennedy, 110 U.S.App. D.C. 380, 297 F.2d 791 (1961), cert. den. 369 U.S. 844, 82 S.Ct. 876, 7 L.Ed.2d 848 (1962).

6. Giova v. Rosenberg, 308 F.2d 347, was decided June 15, 1962; rehearing denied

sion, that a Court of Appeals did not possess original jurisdiction to review an order of the Board of Immigration Appeals denying a motion to reopen an immigration proceeding.

In Louie King Fong v. Immigration and Naturalization Service, 308 F.2d 191 (1962), the Court of Appeals for the Ninth Circuit assumed, again without discussion of the jurisdictional problem, that an order by the Attorney General refusing to suspend a deportation order, entered under § 244(a), was reviewable by it. The Court of Appeals, acting under Pub.L. 87–301, § 5(b), supra, had accepted a transfer of a case from the United States District Court pending in the District Court on the effective date of the 1961 Act. Cf. Gallegos v. Immigration and Naturalization Service, 310 F. 2d 688 (9 Cir., 1962), in connection with Gallegos v. Hoy, 262 F.2d 665 (9 Cir., 1958). But see Holz v. Immigration and Naturalization Service, 309 F.2d 452 (9 Cir., 1962).

In Zupicich v. Esperdy, 207 F.Supp. 574 (S.D.N.Y.1962), the United States District Court for the Southern District of New York held that it, rather than the Court of Appeals for the Second Circuit, possessed the original jurisdiction to review an order of the Attorney General, entered under § 243(h), 8 U.S.C.A. § 1253(h), and refused to restrain deportation on the ground that the alien would be subjected to physical persecution if he were to be deported. See also Holz v. Immigration and Naturalization Service, 309 F.2d 452 (1962), in which the Court of Appeals for the Ninth Circuit held that it lacked jurisdiction under the 1961 Act to originally review a

similar order entered under § 243(h). But compare this with the decision in Louie King Fong v. Immigration and Naturalization Service, supra, decided four months earlier.

In Blagaic v. Flagg, 304 F.2d 623 (1962), the Court of Appeals for the Seventh Circuit reached the opposite conclusion as to an order under § 243(h) on the theory that the execution or suspension of a deportation order was "ancillary" to the order directing deportation itself and therefore was an integral part of it. Using the ancillary approach, the same Court of Appeals in Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453 (1962), held that an order denying an alien a first preference immigrant visa under § 203(a) (1) (A), 8 U.S. C.A. § 1153(a) (1) (A), was reviewable originally by the Court of Appeals.

In Foti v. Immigration and Naturalization Service, 308 F.2d 779 (1962), the Court of Appeals for the Second Circuit, sitting en banc,[7] held by a five to four vote, that an order entered by the Attorney General under § 244(a) (5) of the Nationality and Immigration Act, 8 U.S.C.A. § 1254(a) (5), refusing to suspend an alien's deportation upon the ground of exceptional hardship, was not a final order of deportation pursuant to § 242(b), within the ambit of the 1961 Act.[8, 9] The majority and minority opinions in Foti give detailed consideration to the scope of § 106(a) of the Act as amended in 1961, 8 U.S.C.A. § 1105a, providing for review of final orders of deportation by the Courts of Appeals. The majority opinion conceded that decision either way presents difficulties, but pointed out, nonetheless, that the

---

October 23, 1962. Mai Kai Fong v. Immigration and Naturalization Service, 9 Cir., 305 F.2d 239 was decided June 28, 1962. There was no petition for rehearing in the latter case. We assume that consideration of the petition for rehearing caused a delay in the reporting of the Giova case in the West system.

7. Senior Judge Hincks who, as a member of the original panel had taken the opposite view, was ineligible to sit on the

Court en banc because of his retired status. See United States v. American-Foreign S.S. Corp., 363 U.S. 685, 690–691, 80 S.Ct. 1336, 4 L.Ed.2d 1491 (1960). If Judge Hincks had sat as a member of the Court en banc the Court might have been divided evenly.

8. See also Ng Yen v. Immigration and Naturalization Service, 308 F.2d 796 (2 Cir., 1962).

9. Certiorari granted, 83 S.Ct. 503 (1963).

1961 Act gave to the Courts of Appeals original jurisdiction to review administrative final orders of deportation only when made "pursuant to administrative proceedings under section 242(b)" of the 1952 Act, that § 242(b) prescribes the procedure by which deportability of an alien must be determined, and that subsections (c), (d) and (e) use the phrase "final order of deportation" in referring to the order that determines an alien's deportability in proceedings under Section 242(b). From the foregoing the majority deduced that the words "final order of deportation" were words of art, and that Congress, by lifting this phrase bodily from the 1952 Act and inserting it in the 1961 Act, intended that it should have in the 1961 Act the meaning and effect that it had in the 1952 Act; viz., a bare-bones order directing deportability without more.[10] In reaching the opposite conclusion, the minority laid emphasis upon legislative history as clearly indicating an intention on the part of Congress to place in the courts of appeals the sole power to review orders having incidents of finality entered in deportation proceedings. The minority opinion stated that the majority view, by interpreting the immigration laws to authorize a review by the United States District Courts in some instances and the Courts of Appeals in others, had "frustrated the legislative purposes and [had] saddled the litigants and the courts with a complicating, overlapping, and delaying additional form of deportation review." Foti v. Immigration and Naturalization Service, supra, 308 F.2d at 789.

The foundation on which the majority opinion in Foti rests has obvious limitations, as is apparent from recent decisions in the field of immigration law. Both the Immigration Act of 1917 and the Immigration and Nationality Act of 1952 provided that "[i]n any case in which an alien is ordered deported from the United States * * * the decision of the Attorney General shall be final." 8 U.S.C.A. § 1252(b). In construing the 1917 Act, the Supreme Court, in Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953), held that the quoted phrase barred judicial review, under § 10 of the Administrative Procedure Act, of an order determining deportability.[11] The Supreme Court in Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955) concluded, nonetheless, that the same phrase used in the 1952 Act meant only that administrative finality, and therefore a determination of deportability, could be reviewed under § 10 of the Administrative Procedure Act by a United States District Court. Despite the fact that the words employed in the 1917 Act had been construed judicially by the Supreme Court itself and thereafter had been embodied without change in the 1952 Immigration Act, the Court, in construing the 1952 Act, seemingly gave a meaning to the words which it had rejected in Heikkila. Mr. Justice Black stated, 349 U.S. at p. 50, 75 S.Ct. at p. 593: "[W]e must consider the effect of the 1952 Immigration and Nationality Act on the right to judicial review under the Administrative Procedure Act.", the latter Act having become law in 1946.

The vital question which we must decide is what does the phrase, "final order of deportation", mean in the 1952 Act in an appellate or review context? This is so because the 1961 Act represents the first time a specific statutory scheme for review of deportation and exclusion orders has been established. See 71 Yale L.J. p. 760 (1962). In deciding this

---

10. The Regulations under the Act of 1952, 8 U.S.C.A. § 1252, 8 C.F.R. Part 242 and 243 (particularly §§ 242.2(d), 242.8, 242.14, 242.18, 242.20 and 243.1(a) in effect before December 19, 1961, use the expression "final order of deportation" in a context that suggests that, for certain non-appellate purposes, the order directing deportation, without more, could be the order referred to.

11. The Supreme Court did not consider the 1952 Act, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq. in Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972. See note 4 cited to the text at p. 232, at page 604 of 73 S.Ct.

question the meaning of the phrase in the 1952 Act, of course, requires careful consideration. But it is only one of several major factors to be weighed in the light of the basic purposes which Congress intended to achieve by the 1961 Act in relation to concepts applicable to the appealability of administrative orders and the rights inherent in judicial review.

■ It is hornbook law that an administrative order to be subject to judicial review must be "final". Whether or not it is "final" is ascertained by a "realistic appraisal of the consequences of such action". Isbrandtsen Co. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51, 55 (1954), cert. den. Japan-Atlantic & Gulf Conference v. United States, 347 U. S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954). Administrative orders are reviewable ordinarily when "they impose an obligation * * * as a consummation of the administrative process." Chicago & Southern Airlines v. Waterman Steamship Corp., 333 U.S. 103, 113, 68 S. Ct. 431, 437, 92 L.Ed. 568 (1948). By this test the determination to deport the plaintiffs in the case at bar to Hong Kong possesses the earmarks of reviewable finality. After the determination that the plaintiffs were deportable, further administrative action was needed before they could be forced to leave the United States. The further administrative action was required by statute; viz., Section 243(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1253 (a). The plaintiffs, as has been stated, assert that the Attorney General did not inquire of the "country", Communist China, as to whether it will receive the plaintiffs.[12] Without a determination of the country to which the plaintiffs were to be sent, they cannot, they assert, be deported. Compare Lu v. Rogers, 164 F.Supp. 320, 321–322 (D.D.C.), aff'd per curiam, 104 U.S.App.D.C. 374, 262 F.2d 471 (1958). When the determinations have been made nothing remains to be done except to put the plaintiffs on a carrier. The determinations may be viewed as the consummation of the deportation proceedings.

An examination of the decisions reviewing deportation proceedings occurring under Section 10 of the Administrative Procedure Act prior to the passage of the Act of 1961 throws but little light on the troublesome issue confronting us. Section 10(c) made two kinds of "agency action" reviewable: first, those reviewable by statute, and second, those final in nature and substance. Prior to the Act of 1961, no special statutory form for the judicial review of deportation orders existed. See House Report No. 1086 to the Act of 1961, 2 U.S.Code Cong. & Adm.News, 87th Cong., 1st Sess., 1961, pp. 2950, 2966, 2971. It follows that the only kind of orders in deportation proceedings which the United States District Courts were authorized to review under the Administrative Procedure Act were those which constituted "final agency action".[13] Under the Administrative Procedure Act determinations of deportation destinations were subjected frequently to judicial review. Ying v. Kennedy, 110 U.S. App.D.C. 247, 292 F.2d 740 (1961), cert. den. 368 U.S. 914, 82 S.Ct. 193, 7 L.Ed.2d

12. We assume for the purpose of determining whether this court or the court below has jurisdiction that the allegations of the complaint are true and correct. Whether under the circumstances of this particular case the law will require the Attorney General to make the requested inquiry of Communist China is not germane to the jurisdictional issue we are presently discussing.

13. Section 2(g) of the APA, 5 U.S.C. § 1001(g), defines "agency action" to include "the whole or part of every agency * * * order * * * [or] sanction * * * ".

Section 2(d), 5 U.S.C.A. § 1001(d), defines "order" as "the whole or any part of the final disposition * * * of any agency in any matter * * * ".

Section 2(f), 5 U.S.C.A. § 1001(f), defines "sanction" to include "the whole or part of any agency (1) * * * requirement * * * affecting the freedom of any person * * * or (7) taking * * * other compulsory or restrictive action."

130 (1961); Leong Leun Do v. Esperdy, supra; Cheng Fu Sheng v. Rogers, 177 F.Supp. 281 (D.D.C.1959), reversed on other grounds, 108 U.S.App.D.C. 115, 280 F.2d 663 (1960), cert. den. 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960); Chao Chin Chen v. Murff, 168 F.Supp. 349 (S. D.N.Y.1958); Wong Lum v. Esperdy, 187 F.Supp. 95 (S.D.N.Y.1960); Dai Ming Shih v. Kennedy, 111 U.S.App.D. C. 380, 297 F.2d 791 (1961), cert. den. 369 U.S. 844, 82 S.Ct. 876, 7 L.Ed.2d 848 (1962). The courts have recognized consistently that such determinations had reviewable finality under the Administrative Procedure Act.[14]

 Since a determination of the place to which an alien is deportable was a "final agency action" under Section 10 (c) of the Administrative Procedure Act and is, in our view, a final order or direction consummating deportation, is it reasonable to conclude that Congress intended that such determinations should be included within the words "final orders of deportation" of the 1961 Act? If such determinations are not included, the aggrieved alien will have two avenues of review open to him, depending upon the nature of his complaint. If aggrieved by the direction of the Attorney General as to the place to which he is to be deported, he can seek relief in a United States District Court. But if the alien is dissatisfied with the order deciding that he is to be deported he may seek relief only in a Court of Appeals. Such an interpretation of the 1961 Act would authorize both the United States District Courts and the Courts of Appeals to review orders or determinations in deportation proceedings, thereby defeating what seems to have been the basic purpose of the 1961 Act. That purpose was to be to create a

"single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States", and to make review by Courts of Appeals "the sole and exclusive procedure for judicial review of orders of deportation". House Report No. 1086, supra, p. 2966. See also the statements of Chairman Francis E. Walter, the legislative leader in all this area, those of his assistant and Committee reporter, Congressman Moore, and Representative Lindsay, ably summed up by Judge Clark in Foti, 308 F.2d at p. 794, in respect to the meaning of the phrase "the final order of deportation", made on the floor of the House in the light of the six months' period of limitation on the finality of an order. Chairman Walter stated: "that the 6 months' period on the question of finality of an order applies to the final administrative adjudication of the application for suspension of deportation just as it would apply to any other issue brought up in deportation proceedings." 105 Cong.Rec. 12728. See 71 Yale L.J. 760, 763–764, n. 20 (1962). See also § 106(a) (1) of the amended Act, 8 U.S.C.A. § 1105a(a) (1) (Supp.1962). The six months' period supplied by the 1961 statute from the date of the final deportation order in which to bring a petition for review and the confusion resulting if reviews are to be brought to two courts is referred to also in Judge Clark's dissenting opinion. It was seemingly the intention of Congress to set up a fair, fast, and single system of review of deportation proceedings. Did Congress accomplish this by eliminating judicial review of orders having features of finality in deportation proceedings,[15] by the United States District Courts and by substituting therefor

14. Other orders in deportation proceedings were also reviewed under the Administrative Procedure Act. These included orders directing deportation without a specification of destination, Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L. Ed. 868 (1955); Cf. Vlisidis v. Holland, 245 F.2d 812 (3 Cir., 1957), and orders denying applications to withhold deportation under 8 U.S.C. § 1253(h), Blazina v.

Bouchard, 286 F.2d 507 (3 Cir.), cert. den. 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed. 2d 1242 (1961); Sunjka v. Esperdy, 182 F.Supp. 599 (S.D.N.Y.), cert. den. Ronceirch v. Esperdy, 364 U.S. 815, 81 S.Ct. 43, 5 L.Ed.2d 46 (1960).

15. Except in habeas corpus proceedings. As to these see 8 U.S.C.A. §§ 1105a(a) (9) and 1105a(b).

*in limine* reviews by the Courts of Appeals?

It is perhaps not irrelevant to point out that before the 1961 Act, aliens who had been adjudged deportable repeatedly filed habeas corpus actions or declaratory judgment suits under Section 10(c) of the Administrative Procedure Act for the purpose of delaying or defeating deportation. Such tactics were resorted to by aliens of the most undesirable kind. To prevent this practice "the well-established doctrine of res judicata * * * [was] written into the judicial procedure for review of deportation orders." House Report No. 1086, 2 U.S.Code Cong. & Adm. News, 87th Cong., 1st Sess., 1961, p. 2973. Subparagraph (c) of 8 U.S.C.A. § 1105a provides: " * * * Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding, and, if so, the nature and date thereof, and the court in which such proceeding took place. No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order."

The delays against which § 1105a (c) was aimed can be created easily if the review procedures be truncated. The alien can bring successive actions to attack a determination of the place to which he is to be deported. The steps taken by the plaintiffs in the instant case serve as an example. Before the suit on which the present appeal is based each plaintiff previously had sued the defendant unsuccessfully in the court below, and had attacked deportation to Hong Kong, upon the ground that Hong Kong was not a "country" to which he could be deported under 8 U.S.C.A. § 1253.[16] The suit at bar seems to be a second effort by the plaintiffs to challenge the validity of deportation to Hong Kong despite the fact that no reason appears in the present record why the ground presently urged could not have been asserted by each of them in the earlier action. To hold that the review sought by plaintiffs is not subject to the Act of 1961 would enable them to escape the impact of subparagraph (c) of § 1105a and to defeat the salutary purpose of a unitary review system.

16. The contents of the two following paragraphs have been gleaned from the record. They are not to be deemed to be findings of fact as required by Rule 52(a), Fed.R.Civ.Proc., 28 U.S.C. The material is set out in this footnote merely by way of background in order that the issues presented by the case at bar may be clearly before the reviewing Tribunal, if certiorari be granted. Upon remand by this court to the court below, as pointed out in the final paragraph of this opinion, the trial court must make its own findings of fact as required by Rule 52(a).

Yu's earlier action was begun on September 27, 1960, C.A. 854–60. On February 10, 1961 a summary judgment was granted in favor of defendant and a stay pending appeal was ordered by Judge Meaney. On March 6, 1961 Yu took an appeal to this court. On September 14, 1961, a stipulation that the action should be determined and controlled by the case of Peter Ying and Wong Chai Lian v. Robert Kennedy, Attorney General, was filed in this Court. The Ying case was then before the Supreme Court on a petition for writ of certiorari from the decision rendered in 110 U.S.App. D.C. 247, 292 F.2d 740 holding that Hong Kong was a country to which aliens could be deported. On December 29, 1961, following the denial of certiorari by the Supreme Court, 368 U.S. 914, 82 S.Ct. 193, 7 L.Ed.2d 130, the appeal in this Court was dismissed by stipulation.

It appears further that the earlier action by Chi, Hong and another was begun on October 28, 1960, C.A. 935–60. In that action the same ground was advanced for attacking the validity of the Hong Kong deportation as was asserted in Yu's action. On March 1, 1961 the parties stipulated that the complaint should be dismissed and that they would be bound by the final decision in the case instituted by Yu. On the basis of this stipulation, an order was entered by Judge Hartshorne on March 1, 1961 dismissing the action without prejudice as to Chi and Hong.

What has been stated is, we think, the strongest argument that we can put forward in support of the proposition, more eloquently advanced by Judge Clark and his dissenting brother in Foti, supra, that the Courts of Appeals have the *sole jurisdiction* or power to review such determinations or "directions" as those at bar.[17] But is that argument good enough?

The determinations or "directions" of the Attorney General that the plaintiffs shall be deported to Hong Kong are no more within the specified language of Section 242(b) than was the determination before the Court of Appeals for the Second Circuit in Foti, supra. In Foti the Attorney General had refused to suspend the alien's deportation under the powers given him by Section 244(a). In the case at bar the Attorney General has designated Hong Kong as the place of deportation pursuant to the authority granted him by Section 243(a) of the 1952 Immigration and Nationality Act, 8 U.S.C.A. 1253(a).[18] The fact that in respect to Foti, the Attorney General was exercising a discretionary grace function and that in the case at bar the statute requires[19] him to make an inquiry prescribed by it is of little importance. It is interesting to observe that in Zupicich, supra, it was stated that the role of the Special Inquiry Officer is not adjudicatory under § 243(h) while an order entered under § 242(b) is the result of an adjudication process. Zupicich v. Esperdy, supra, 207 F.Supp. at 578. In the case at bar the role of the Attorney General or his delegatee, see 8 C.F.R. § 243.1 (b) prior to the 1961 revisions, in designating the country to which the alien is to be deported under § 243(a) of the Act does not involve an adjudication.

The important point is that we are faced with a task of statutory interpretation and though the legislative history, despite the strong position taken by the Bureau of Immigration and Naturalization to the contrary, Foti, supra 308 F.2d at 782, seems to look toward a unitary review system of deportation orders and determinations by the Courts of Appeals, the express language of the statute is

---

17. Cf. the illuminating article, "Deportation and Exclusion", 71 Yale L.J. pp. 760–792 (1962).

18. Section 243(a) in pertinent part provides as follows:

"The deportation of an alien in the United States provided for in this Act, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as * * * [hereinafter] set forth * * *".

19. We assume for the purpose of determining whether this court or the court below has jurisdiction that the allegations of the complaint are true and correct. Whether under the circumstances of this particular case the law will require the Attorney General to make the requested inquiry of Communist China is not germane to the jurisdictional issue we are presently discussing.

such that to interpret as has been suggested requires judicial legislation of such a sweeping and broad kind as to be virtually impossible. The ruling of the Supreme Court in Ozawa v. United States, 260 U.S. 178, 43 S.Ct. 65, 67 L.Ed. 199 (1922) [20] would seem to circumscribe the limits of the judicial interpretation permissible to us, and to hold that § 106 (a) of the amended Act, 8 U.S.C.A. § 1105a(a) (1962 Supp.), would permit this court to review the determinations at bar would transcend the permissible.[21]

■■ This brings us to the final aspect of this case. On prior occasions we have called attention to the provisions of Rule 52(a), Fed.R.Civ.Proc., 28 U.S.C.A., as to the requirement that the trial court make fair and adequate findings of fact and conclusions of law. This has not been done in the case at bar. No operative facts were found. The law, concluded to be governing by the trial court, was stated as follows: "[I]t appearing to the court after due deliberation that the plaintiffs show no likelihood of success in the action, by virtue of the operation of the doctrine of *res judicata* and on the basis of the court's agreement with the reasoning in Leong Leun Do v. Esperdy, 197 F.Supp. 604 (S.D.N.Y.1961), and for good and sufficient cause shown, [i]t is * * * [ordered] that plaintiffs' action for a preliminary injunction be and hereby is denied." This is insufficient. See Cuneo for and on Behalf of N. L. R. B. v. Local No. 825, International Union of Operating Engineers, 300 F.2d 832, 833 n. 3 (3 Cir., 1962); I. C. C. v. Cardinale Trucking Corporation, 308 F.2d 435, 437 (3 Cir., 1962); and Kreielsheimer v. Cohen, 252 F.2d 330, 331 (4 Cir., 1958). This court is not authorized to make findings of fact or to apply the law in the first instance.[22] This is the duty of the trial court. Accordingly, the order of the court below denying the interlocutory relief sought by the plaintiffs will be vacated and the case will be remanded with directions to make adequate findings of fact and conclusions of law as required by Rule 52(a) and to stay the plaintiffs' deportations pending the disposition of their application for a preliminary injunction.

20. In Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922), Mr. Justice Sutherland stated: "It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail. See Holy Trinity Church v. United States, 143 U.S. 457 [12 S. Ct. 511, 36 L.Ed. 226]; Heydenfeldt v. Daney Gold [& Silver] Mining Co., 93 U.S. 634, 638 [23 L.Ed.2d 995]."

21. It is interesting to note that when the Act of 1961 was passed the Regulations required only that the order of the Special Inquiry Officer should state that the "alien be deported". 8 C.F.R. § 242.18 (1958). The Regulations were amended on December 19, 1961, shortly after the effective date of the 1961 Act, i. e., October 26, 1961, and it is now required that the Special Inquiry Officer include in the deportation order a direction as to the country to which the alien is to be sent. 8 C.F.R. § 242.18(c) (1962 Supp.). There can no longer be any question as to the status of reviewable finality of the designation of the place of deportation. The fact that under the Regulations as they existed prior to December 19, 1961, the plaintiffs' deportations were ordered, so to speak, on one piece of paper and their deportation destination was designated later and on another piece of paper may seem too technical to be stomached but we think it is necessary to construe the review provisions of the 1961 Act as we have done.

22. See again note 13, supra.