**Pavlos KATSELIANOS, Plaintiff,**

v.

**P. A. ESPERDY, District Director, New York District, Immigration and Naturalization Service, Defendant.**

United States District Court
S. D. New York.

Oct. 10, 1963.

Sachs & Spector, New York City, for plaintiff, Joseph L. Andrews, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for defendant, Roy Babitt, Sp. Asst. U. S. Atty., of counsel.

WEINFELD, District Judge.

This is an action by plaintiff to review and overrule an order of the Attorney

General entered through the Board of Immigration Appeals which upheld the denial by a Special Inquiry Officer of plaintiff's application to reopen his deportation proceedings to permit him to apply for discretionary relief under section 243(h) of the Immigration and Nationality Act.[1] The defendant moves to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction of the subject matter and, alternatively, for summary judgment pursuant to Rule 56.

■ The sweep of the underlying rationale in Foti v. Immigration and Naturalization Service [2] requires denial of the motion insofar as it is based upon lack of jurisdiction.[3] That case held that a denial of an application for discretionary relief under section 244(a)(5) of the Act [4] by an admittedly deportable alien was not a "final order of deportation," judicial review of which was exclusively vested in the Court of Appeals by amendment in 1961; [5] accordingly, jurisdiction in the first instance to review the discretionary denial was in the District Court and not in the Court of Appeals. The basic premise upon which the Court's holding rested was the essential difference between a "final order of deportation," which requires findings within the specific provisions of the Immigration Law; and "withholding and suspending orders," which involve the Attorney General's vast discretionary powers to be dispensed, as the Supreme Court has phrased it, as a "matter of grace" and in his "unfettered discretion." [6] Two reasons the majority found persuasive in concluding that initial jurisdiction rested in the District Court are particularly applicable here.

First, an absence of clearly defined Congressional intent that the initial judicial review of an administrative officer's broad discretion be heard by a court of three judges was considered significant; it was felt such a judicial review would bring into play an automatic stay and result in delay contrary to a Congressional purpose of expedition under the 1961 amendment. Second, section 106(a)(4) of the Act, which sets forth the standard of review, requires that the "final order of deportation" be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole; this standard the majority deemed inapplicable to the wide range of discretionary powers vested in the Attorney General. In this circumstance the majority was of the view that the narrow scope of review in the District Court would call for action in comparatively few matters and secure prompt execution of administrative orders.

Government counsel urges that Foti should be confined to its special facts, which concerned an application under section 244(a)(5) for discretionary relief to suspend a final order of deportation and for adjustment of status; however, the scope of the Court of Appeals opinion with respect to all discretionary applications to the Attorney General does not justify confining that case. Accordingly, the motion to dismiss for lack of jurisdiction of the subject matter is denied.

■ The Court, however, is of the view that the defendant is entitled to a dismissal of the complaint under the summary judgment rule. The essential facts are not in dispute and the sole issue is whether, upon the record,[7] it was arbi-

1. 66 Stat. 214 (1952), 8 U.S.C. § 1253(h) (1958).

2. 308 F.2d 779 (2d Cir., 1962), cert. granted, 371 U.S. 947, 83 S.Ct. 503, 9 L.Ed.2d 496 (1963).

3. See also, Lam Man Chi v. Bouchard, 314 F.2d 664 (3d Cir., 1963), which discusses the holdings of various cases on this and related issues.

4. 66 Stat. 215, 216, 8 U.S.C. § 1254(a)(5) (1958), as amended, § 244(a)(1),

76 Stat. 1247, 1248 (1962), 8 U.S.C. § 1254(a)(1) (Supp. IV, 1962).

5. Immigration and Nationality Act, § 106, 75 Stat. 651–653 (1961), 8 U.S.C. § 1105a (Supp. IV, 1962).

6. Jay v. Boyd, 351 U.S. 345, 354, 357–358, 76 S.Ct. 919, 100 L.Ed. 1242 (1956).

7. Counsel for the plaintiff, both upon the argument and in his brief, refers to "facts" which are not contained in or are part of the record.

trary as a matter of law to deny, in the exercise of discretion, petitioner's motion to reopen his deportation proceeding to permit an application for relief under section 243(h) of the Act.

Plaintiff, a native of Albania, last a resident of Greece, arrived in the United States on January 28, 1962 with a duly issued Greek passport. Admitted as a nonimmigrant visitor, he overstayed his leave, and deportation proceedings were commenced. At his hearing, conducted through a Greek interpreter, the plaintiff was informed of his right to be represented by counsel; however, he indicated his readiness to proceed alone.[8] He conceded his deportability, but requested the privilege of voluntary departure, which was granted. Plaintiff also stated he had been a legal resident of Greece since 1958 until his entry here in January 1962; that his status there was an alien and as such he reported to the police every six months and obtained permission to stay; that he expected to return to Greece, and already had his passage ticket. When informed by the Special Inquiry Officer that if he did not depart voluntarily and it became necessary to deport him he had the right to designate the country to which he preferred to be deported, the plaintiff named Greece. He said he preferred to return voluntarily to that country; that he did not wish to go to Albania because members of his family had been the victims of Communist terror and he feared he might be killed if he returned.

Plaintiff indicated satisfaction with the disposition of his request for voluntary departure and took no appeal therefrom. However, just prior to the expiration of an extended period of departure, he retained counsel, who moved to reopen the proceedings so that plaintiff could apply for a stay of deportation under section 243(h) of the Act as a refugee from Albania. The affidavit in support of the motion made no claim that plaintiff would be subject to persecution in Greece. The

motion was denied upon the ground that deportation and voluntary departure were not projected for Albania, but for Greece. On appeal to the Board of Immigration Appeals, it was contended for the first time that he would be persecuted in Greece. The essence of the claim as advanced in his counsel's brief to the Appeals Board was that while residing in Greece he was under constant duress by police officials and, after the last time he reported to police officials, he determined to seek freedom in another country.

The Board of Immigration Appeals reviewed the record and, on the basis of plaintiff's own statements, concluded there was no evidence to support a claim of physical persecution in Greece and dismissed the appeal. It referred to his testimony in which he stated that he acquired a permanent residential status in Greece and had been given asylum there for more than three years as negating any such claim. The Board, however, dismissed the appeal without prejudice in the event an order should be entered for plaintiff's deportation to Albania, thereby affording him an opportunity to present his claim under section 243(h) in the event deportation to that country should be contemplated.

Thus we reach the question whether the denial of plaintiff's motion for reopening his deportation proceeding to afford him an opportunity to substantiate his claim for relief under section 243(h) on the ground he faces likely persecution in Greece was so arbitrary and unreasonable as to require that it be set aside.

The record itself, as already noted, is barren of evidential matter to support plaintiff's claim that he is likely to be subject to physical persecution in Greece. Other than statements by counsel in the brief on appeal from the order of the Special Inquiry Officer, the record contains no statement or affidavit by the plaintiff in support of this belated contention. The only matter in the record

---

8. As a consequence, the plaintiff waived his statutory "privilege" of being represented by counsel. See Giaimo v. Pederson, 289 F.2d 483 (6th Cir., 1961); United States ex rel. Dentico v. Esperdy, 280 F.2d 71 (2d Cir., 1960).

now relied upon to support the claim is plaintiff's testimony at the deportation hearing, when he was asked his status in Greece, to which he responded he was an alien and reported every six months to the police and obtained permission to stay. The requirement that aliens report to authorities at periodic intervals is a common practice in continental countries, and indeed our own laws have similar provisions.[9] The matter is cast in true perspective by the plaintiff's statement made a week prior to the deportation hearing when he said, "While in Greece I had to report to the Center for Aliens of Athens, where all aliens in Greece are registered." The attempt by counsel to urge that this requirement constituted "constant duress by the officials" in Greece meets a sharp challenge from a fair reading of plaintiff's entire testimony, in which he clearly indicated a preference to return to Greece, for which, previous to the deportation proceeding, he had already arranged his return passage. In addition to his residence there for almost four years before entry into the United States, it appears that his mother had married a military attache to the Greek Embassy in Rome and thereafter, since 1955, she and her husband live in Athens; that his mother is a naturalized citizen of Greece; that plaintiff there joined his mother and stepfather in 1958; and that while in Athens, he worked as a messenger in a lawyer's office. Under all the circumstances, it is understandable why the Special Inquiry Officer, in denying the motion to reopen the hearing, referred to it as "frivolous and only for the purpose of delaying these proceedings."

Whether the statutory standard of review which now governs "final orders of deportation," or the more circumscribed standard of review of discretionary orders is here applied,[10] there is no basis to support a claim to overturn the refusal to reopen the deportation proceedings. Upon the record before it, the Board's denial of the motion to reopen the deportation hearing is clearly beyond judicial challenge, since not the slightest probative material supported the motion to reopen.

The motion for summary judgment is granted.

9. Aliens over 14 who remain in the United States for more than thirty days must register with the Attorney General, be fingerprinted, carry a registration card with them at all times (if over 18), report their addresses to the Attorney General once a year and notify him of any change in address within ten days of the change. Failure to do any of the foregoing may lead to a fine and imprisonment. In addition, a failure to keep the Attorney General informed as to address may lead to deportation. 66 Stat. 224, 225 (1952), 8 U.S.C. §§ 1302–1306 (1958).

10. See Jay v. Boyd, 351 U.S. 345, 76 S. Ct. 919, 100 L.Ed. 1242 (1956); Foti v. Immigration and Naturalization Service, 308 F.2d 779 (2d Cir., 1962), cert. granted, 371 U.S. 947, 83 S.Ct. 503, 9 L. Ed.2d 496 (1963).