**CHAO CHIN CHEN, also known as Charley Ah Chaw, A 11 087 742, Plaintiff,**

v.

**John L. MURFF, as District Director for the New York District, Immigration and Naturalization Service, United States Department of Justice, Defendant.**

United States District Court
S. D. New York.
Dec. 2, 1958.

Barry, Barry & Barry, Long Island City, N. Y., for plaintiff, by John J. Barry, Long Island City, N. Y., of counsel.

Arthur H. Christy, U. S. Atty., New York City, for defendant, by Roy Babitt, Special Asst. U. S. Atty., New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Plaintiff, a native and citizen of the Chinese mainland, brought this action pursuant to the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. to review the determination of the Attorney General that he is deportable to Hong Kong. He seeks an injunction restraining the defendant from executing an order and warrant for his deportation and a declaration that he is entitled to a hearing on the issue of his deportability to the Chinese mainland. The case is now before me on plaintiff's application for an injunction pendente lite. The proceedings were instituted by an order to show cause containing a temporary stay.

The plaintiff last entered the United States, as a crewman, on September 3, 1956. He has admitted that his entrance was permitted only on a temporary basis and that he illegally overstayed the authorized period. On Janu-

ary 31, 1958 a deportation hearing was held, before a Special Inquiry Officer, during which plaintiff conceded his deportability. At that time plaintiff stated that in the event his deportation was ordered, he desired to be sent to the place of his birth, the mainland of China.[1]

This selection was made pursuant to 8 U.S.C.A. § 1253(a) which sets up a method for determining the country to which a deportable alien is to be sent. The statute provides that in the first instance the alien shall be deported to " * * * a country promptly designated by the alien if that country is willing to accept him into its territory * * *." Thus, had plaintiff taken no action subsequent to his designation of the mainland of China, the Attorney General might have been under a duty to communicate with the Chinese Communist government, before deporting the plaintiff, in order to determine whether that government would receive him. See United States ex rel. Tom Man v. Shaughnessy, D.C.S.D.N.Y.1956, 142 F.Supp. 444. (appeal now pending).

However, on October 27, 1958, plaintiff submitted an application for the withholding of his deportation to China on the ground that he would be subject to persecution there. 8 U.S.C.A. § 1253 (h). In paragraph 2 of this application plaintiff stated: "Your deponent desires to point out that he designated the mainland of China as it existed before the Communists occupied the same * *."

On the basis of this formal request by plaintiff, not to be sent to the Chinese mainland, the Immigration and Naturalization Service (hereinafter "Service") considered his original designation withdrawn. The Service, therefore, did not proceed under that portion of Section 1253(a), requiring deportation to a country of which the alien is a "sub-ject national, or citizen" because those words described the country to which plaintiff has specifically requested not to be sent in his application of October 27, 1958. The Service then proceeded in accordance with the final portion of the subsection which provides that if the country of nationality or citizenship is not willing to accept the alien:

"deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—

(1) to the country from which such alien last entered the United States;

(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

(3) to the country in which he was born;

(4) to the country in which the place of his birth is situated at the time he is ordered deported;

(5) to any country in which he resided prior to entering the country from which he · entered the United States;

(6) to the country which had sovereignty over the birthplace of the alien at the time of his birth; or

(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

The Service determined that the plaintiff was deportable to Hong Kong under subsections (5) [2] and (7) of the above quoted statute.

---

1. Plaintiff was found deportable but was granted voluntary departure. A warrant of deportation was issued upon his failure to depart within the required time.

2. Hong Kong residence was established by entries in plaintiff's Seaman's Discharge Book, issued by the Hong Kong government, and by the fact that plaintiff had been in Hong Kong in 1948.

On October 30, 1958 the British Visa Office granted plaintiff a visa for entry into Hong Kong and on November 7, 1958 he was taken into custody by the Service preliminary to his deportation. Plaintiff then instituted this action to determine the legality of his deportation.

At the outset, I note that the plaintiff has conceded deportability. Further he does not argue that he is not properly deportable to Hong Kong if the Service was justified in disregarding his designation of the Chinese mainland. Indeed, plaintiff makes but two objections to the procedure followed by the Service. He urges that, despite his request not to be sent to Communist China and defendant's decision not to send him there, defendant was nevertheless under a duty to (1) inquire of the Chinese Communist government as to whether it would accept plaintiff and (2) grant plaintiff a hearing to determine his deportability to the Chinese mainland.

I find both of these contentions totally lacking in merit. Plaintiff completely ignores the purpose for which the statute permits the alien to designate a country and requires the Attorney General to ascertain the alien's acceptability there. Obviously, the Attorney General is required to communicate with the country chosen so that the alien may be sent to the place of his choice if that government is willing to receive him. However, where, as here, the alien no longer wishes to be sent to the country of his original choice and no intention is indicated to send him there, such an inquiry would be a totally useless formality. Further, in the light of the statutory purpose, the absurdity of a request to be sent to a country "as it existed" some ten years before is patent. It is clear, therefore, that plaintiff's application of October 27, 1958 so modified his original request as to render it meaningless. For the purposes of the statute he had in effect withdrawn his designation and the Service was justified in disregarding it.

Plaintiff's contention that he is entitled to a hearing to determine his deportability to the Chinese mainland pursuant to 8 U.S.C.A. § 1253(h) may be treated briefly. Plaintiff makes no claim that the defendant has any intention of deporting him to China. Thus a hearing on his deportability to that country would be an even more meaningless form than the inquiry which I have already discussed. Clearly, no such hearing was required under the facts of the instant case.

This case presents not a single issue of fact and, as I have already pointed out, plaintiff's legal arguments are utterly without merit. Indeed, summary judgment for the defendant would have been in order if a motion seeking such relief on the papers submitted had been before me. Since there is no likelihood of success[3] the application for an injunction pendente lite is denied and the temporary stay contained in the order to show cause is vacated.

Motion denied. So ordered.

---

3. See Vergas v. Shaughnessy, D.C.S.D. N.Y.1951, 97 F.Supp. 335, 338; Mo Ching Shing v. Murff, D.C.S.D.N.Y., 168 F. Supp. 381, stay pending appeal denied, September 10, 1958; Mennella v. Shaughnessy, D.C.S.D.N.Y., Civ. 105–282, decided December 15, 1955. Cf. Hall Signal Co. v. General R. R. Signal Co., 2 Cir., 1907, 153 F. 907.