**LAM LEUNG KAM (A15 976 129),**
**Plaintiff,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the District of New York, Defendant.**

**WONG KAM CHEUNG (A15 878 180) and Tung Shing Ho (A15 759 137), Plaintiffs,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the District of New York, Defendant.**

**CHIM PING (A15 942 827) and Ip Fui (A15 975 897), Plaintiffs,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the District of New York, Defendant.**

**Nos. 67 Civ. 2833, 2820, 2934.**

United States District Court
S. D. New York.

Aug. 7, 1967.

Lebenkoff & Coven, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty. for S. D. New York, for defendant, by Daniel Riesel, Sp. Asst. U. S. Atty., New York City.

MANSFIELD, District Judge.

These suits by alien seamen to stay their deportation to Hong Kong all raise the same question:

Where, pursuant to the Immigration and Nationality Act,[1] as amended, Title 8 U.S.C. § 1252, a deportation order was entered against an alien after according him due process, was it an abuse of discretion for the District Director of Immigration and Naturalization to refuse to stay such deportation pending hearing and determination of the alien's petition to reopen his deportation proceeding?

The essential facts with respect to each of the plaintiffs are not in dispute. Each is a native and citizen of the Republic of China, who was admitted to the United States as an alien seaman authorized to remain here during his vessel's stay in port but not to exceed 29 days, pursuant to § 252(a) of the Act (8 U.S.C. § 1282 (a)), and each thereafter remained unlawfully in the United States until he was apprehended.

Proceedings for the deportation of each of the plaintiffs were then duly instituted pursuant to the provisions of the Act and each alien was afforded a hearing before a Special Inquiry Officer pursuant to § 242(b) (8 U.S.C. § 1252 (b)), following which the Officer concluded in each case that the alien was deportable under § 241(a) (2) of the Act (8 U.S.C. § 1251(a) (2)), and ordered that he be deported to Hong Kong, the country designated by him pursuant to §

1. Referred to as "the Act" herein.

243(a) of the Act (8 U.S.C. § 1253). In each case the alien was granted the privilege of voluntary departure pursuant to § 244(e) (8 U.S.C. § 1254(e)).

The dates of entry and of deportation hearings for the plaintiffs were as follows:

|  | Date of Entry | Date of Hearing |
|---|---|---|
| Lam Leung Kam | Feb. 8, 1966 | July 18, 1966 |
| Wong Kam Cheung | May 5, 1965 | Oct. 5, 1965 |
| Tung Shing Ho | April 30, 1966 | June 21, 1966 |
| Chim Ping | June 5, 1963 | June 18, 1965 |
| Ip Fui | Oct. 4, 1964 | Nov. 29, 1966 |

———◆———

None of the plaintiffs appealed from the order of the Special Inquiry Officer. When each failed to depart voluntarily within the time fixed by the District Director, each was ordered to surrender for deportation on a specified date. Thereupon they applied for stays of deportation and classification as refugees pursuant to § 203(a) (7) (8 U.S.C. § 1153(a)), which were denied, whereupon they immediately instituted declaratory judgment actions, following which their counsel stipulated for withdrawal of the actions on the understanding that their status would be determined by the ultimate decision in pending declaratory judgment actions, Chan Hing v. Esperdy, 262 F.Supp. 973 (S.D.N.Y. 1966), affd., 371 F.2d 772 (2d Cir. 1966), cert denied, 386 U.S. 1017, 87 S.Ct. 1372, 18 L.Ed.2d 454 (April 24, 1967), and Tai Mui v. Esperdy, 263 F.Supp. 901 (S.D.N.Y. 1966), affd., 371 F.2d 772 (2d Cir. 1966), cert. denied, 386 U.S. 1017, 87 S.Ct. 1372, 18 L.Ed.2d 454 (April 24, 1967).

When the Goverment's position in both of the aforementioned cases was sustained, the District Director again made arrangements for the deportation of each of the plaintiffs ordering them to appear on specified dates for deportation. Plaintiffs, while conceding they are deportable, then moved to reopen their deportation proceedings to permit them to apply for stays of deportation, two (Chim Ping and Ip Fui) pursuant to § 243(h) (8 U.S.C. § 1253(h)),[2] and the remainder to permit them to withdraw their designation of Hong Kong as the country of deportation, see 8 C.F.R. § 242.2; Chao Chin Chen v. Murff, 168 F.Supp. 349 (S.D.N.Y. 1958). The motions of Wong Cheung and Tung Shing Ho to reopen were filed on July 20, 1967, Lam Leung Kam on July 21, 1967, and Chim Ping and Ip Fui on July 25, 1967. The motions of the first three were accompanied by one-page affidavits, identical in form and language, stating as grounds for their applications:

"4. That since my deportation hearing in July 18, 1967, the situation has changed radically and I no longer wish to be deported to that country. That at the time of my hearing I, in good faith, designated Hong Kong as the place to which I wished to be deported to. In view of the change of circumstances in Hong Kong since my hearing, I ask that I be given an opportunity to withdraw such designation."

The motions of Chim Ping and Ip Fui likewise were supported by affidavits, identical in form, stating that in the latter part of the 1950's each had fled from the mainland of China because of the Communist control of that country and

---

**2.** This section authorizes the Attorney General to withhold deportation of any alien to a country in which in his opinion the alien would be subject to persecution on account of race, religion or political opinion.

"5. That I am anti-Communist and I have opposed Communism wherever I have resided.

"6. That since my deportation hearing in June of 1965 the situation in Hong Kong has changed radically and the Communist influence in that British Crown Colony has become substantially greater and the Communist threat has become a more severe problem.

"7. That it is my belief that I will be persecuted in Hong Kong if I am deported to that country."

Each of the aforementioned applications for a stay was promptly denied by the District Director, who advised Chim Ping and Ip Fui that their applications were "not supported by any probative evidence indicating that you would be subject to persecution on account of race, religion or political opinion, if deported to Hong Kong", and directed all plaintiffs to surrender promptly for deportation. Thereupon plaintiffs instituted the present lawsuits. Pending this Court's determination of the plaintiffs' applications for a stay of deportation, execution of the deportation orders have been stayed.

■ Having had the full benefit of procedural due process in their deportation hearings, including a written statement of the charges against them, the opportunity to present evidence and to object on cross-examination, a fair hearing and a finding by a Special Inquiry Officer, with right of review, plaintiffs cannot merely by filing a petition to reopen require that these procedural steps be repeated before they may be deported. If such were the law, all deportations could be permanently frustrated by the mere filing of successive petitions to reopen. To forestall such an abuse of the due process procedures established under the Act, § 243(a) thereof (8 U.S.C § 1253 (a)) expressly provides that the alien shall "promptly" designate the country to which he is to be deported and that "no alien shall be permitted to make more than one such designation"; and 8 C.F.R. § 242.17(c) provides that the alien

shall apply for temporary withholding of deportation under § 243(h) of the Act "not more than 10 days" after notice of his right to do so. The Regulations further provide, 8 C.F.R. § 103.5, that

"The filing of a motion to reopen or a motion to reconsider or of a subsequent application after notice of denial shall not, unless the Service directs otherwise, serve to stay the execution of any decision made in the case or to extend a previously set departure date."

■ Against such a background, the plaintiffs, in order to obtain a stay of deportation, bear the burden of showing that their applications have merit, that reopening of their proceedings is likely to result in a stay of deportation, and that it was an abuse of discretion for the District Director not to grant a temporary stay pending such proceedings. 8 C.F.R. § 242.17; See Kam Ng v. Pilliod, 279 F. 2d 207 (7th Cir.), cert denied, 365 U.S. 860, 81 S.Ct. 828, 5 L.Ed.2d 823 (1960). Upon reviewing the proof offered in support of the applications before this Court, it does not appear that any of the plaintiffs have sustained their burden of showing any likelihood of success.

■ Turning first to Chim Ping and Ip Fui, the record fails to reveal any evidence indicating that they would be subject to persecution in Hong Kong on account of race, religion or political opinion, within the meaning of § 243(h) (8 U.S.C. § 1253(h)). Their mere conclusory statement that they are anti-Communists and that the situation in Hong Kong has changed radically since their deportation proceeding, is hardly sufficient. It is, of course, a matter of general knowledge that since May, 1967 the press in this country has carried accounts of several riots in 'Hong Kong sponsored and encouraged by Communists seeking to create trouble for Hong Kong's British Government. The suggestion that these riots demonstrate that Hong Kong will be overrun by Communists is as speculative as the proposition that the United States will be split into two states, one Negro and one White, as the result of recent

Negro riots in various American cities. Furthermore, more recent news reports indicate that the police and Army troops in Hong Kong have restrained the riots there and restored peace and order. This Court does not, of course, have any confidential intelligence indicating that the riots in Hong Kong are temporary, sporadic disturbances that will be quickly contained rather than precursors of an invasion by Communist China. The fact is, however, that for the past 17 years Hong Kong has been existing peacefully side-by-side with Communist China. If we were now to assume because of a few riots that such co-existence will shortly be replaced by Communist control, we would be basing our decision on pure speculation. Having in mind that the Immigration and Naturalization Service, with representatives throughout the world, has better sources of information than this Court on which to base its decision of the issue presented by the plaintiffs, and that Congress has accordingly clothed the District Director with broad discretion in the matter, we do not believe that his decision should be disturbed or that it represented an abuse of discretion.

With respect to the applications of Wong Kam Cheung, Tung Shing Ho and Lam Leung Kam for a stay pending their attempts to obtain a change in designation of the country to which they are to be deported, they offer even less supporting evidence than Chim Ping and Ip Fui. Section 243(a) specifies that where an alien is not to be deported to the country designated by him, he shall be deported "to any country of which such alien is a subject national, or a citizen if such country is willing to accept him into its territory". Although these three plaintiffs, having already exhausted their right of designation when they designated Hong Kong, were not entitled to any change in designation, the District Director has nevertheless requested the Consulate General of the Republic of China to accept them, and advises that while it is almost certain that the Republic of China, in accordance with its past policy and practice, will refuse to accept them (for the reason that they have neither lived there nor have family ties there), he will withhold deportation until he has received official advice from the Republic of China. In the event that they are refused by the Republic of China, the District Director will deport them to Hong Kong for the reason that the Attorney General has directed their deportation to Hong Kong since they meet the requirements of subparagraphs (2), (5) and (7) of § 243(a), which provides as follows:

"[T]hen such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either

(1) to the country from which such alien last entered the United States;

(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

(3) to the country in which he was born;

(4) to the country in which the place of his birth is situated at the time he is ordered deported;

(5) to any country in which he resided prior to entering the country from which he entered the United States;

(6) to the country which had sovereignty over the birthplace of the alien at the time of his birth; or

(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

In the absence of any showing of any evidence indicating that the plaintiffs upon deportation to Hong Kong would suffer persecution there, this Court is of the opinion that their present applications are patently frivolous last-minute efforts to avoid the execution of orders issued in accordance with their due process rights, and that the District Director's action in ordering deportation

did not constitute arbitrary or capricious action, or an abuse of discretion.

The applications of all plaintiffs are denied.

So ordered.