**FIDELITY TELEVISION, INC.,**
**Appellant,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**RKO General, Inc., Intervenor.**

**No. 73–2213.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 19, 1974.

Order July 3, 1974.

Decided Aug. 2, 1974.

Joseph Volpe, III, Counsel, F. C. C., with whom John W. Pettit, Gen. Counsel, and Joseph A. Marino, Associate Gen. Counsel, F. C. C., were on the motion to dismiss, for appellee.

Harold David Cohen, Washington, D. C., with whom John J. Duffy, Washington, D. C., was on the response to the motion to dismiss, for intervenor.

Walter H. Sweeney, Washington, D. C., with whom Edward P. Morgan, Washington, D. C., was on the opposition to the motion to dismiss, for appellant.

Before BAZELON, Chief Judge, and MacKINNON and WILKEY, Circuit Judges.

PER CURIAM:

The history of the administrative proceeding out of which this case arises is one of inordinate delay which has considerably tried this court's patience. Several panels of this court, at differing stages, have reviewed the underlying controversy in connection with a petition for writ of mandamus brought by Fidelity Television, Inc., to compel the Federal Communications Commission to issue a decision in that proceeding which had been pending before it for almost eight years. The court ultimately dismissed the mandamus petition as moot when the Commission finally rendered a decision on 6 December 1973.

Fidelity subsequently filed a petition to review the 6 December order in this court. Contending that the decision is not a final order after all, the Commission now moves to dismiss the petition for lack of jurisdiction. We hold that the Commission's decision of 6 December constituted a final order for purposes of judicial review, and accordingly deny the motion to dismiss.

I. HISTORY OF THE LOS ANGELES PROCEEDING

There are in fact two Commission proceedings involved in this matter. The 6 December order at issue emanated from what we shall refer to as the Los Angeles proceeding, which was initiated in 1965 by the filing of an application by RKO General, Inc., for renewal of its license to operate station KHJ–TV in Los Angeles [1] and of the mutually exclusive application by Fidelity for a construction permit to operate on the same frequency.[2] Under consideration in another proceeding still pending before the Commission, which we shall designate the Boston proceeding, are a license renewal application filed by RKO for station WNAC–TV in Boston and mutually exclusive applications filed by two other corporations.[3]

Comparative hearings were held in the Los Angeles proceeding in 1967, which culminated in a decision by the Hearing Examiner [4] on 13 August 1969, five years ago, awarding the license to Fidelity as the preferable applicant on a comparative basis.[5] Pending appeal to the Commission, however, RKO was permitted to continue operation of KHJ–TV pursuant to 47 U.S.C. § 307(d); [6] that

1. RKO General, Inc. (KHJ–TV), FCC Docket No. 16679 (filed 31 Aug. 1965).

2. Fidelity Television, Inc., FCC Docket No. 16680 (filed 25 Oct. 1965). By order FCC 66–503 (8 June 1966), the Commission determined that the two applications were mutually exclusive and designated them for comparative hearings.

3. RKO General, Inc. (WNAC–TV) et al., FCC Docket Nos. 18759–61. These applications were designated for comparative hearings on 3 December 1969. 20 F.C.C.2d 846.

4. Hearing Examiners are now referred to as Administrative Law Judges.

5. FCC 69D–43, 16 P & F Radio Reg.2d 1181 (1969).

6. That provision reads in pertinent part:
 Upon the expiration of any license, upon application therefor, a renewal of such license may be granted from time to time

*interim authority continues to date.* In addition to consideration of RKO's past service and comparison of RKO and Fidelity in the areas of local ownership, diversification of mass communications media, and local support, the Hearing Examiner's decision was based in part on evidence of alleged coercive reciprocal trade practices between RKO and its parent corporation, General Tire and Rubber Company,[7] as those practices affected RKO's qualifications to operate KHJ–TV.[8] That evidence of anti-trust activity persuaded the Department of Justice to file a brief *amicus curiae* with the Commission urging it to disqualify RKO as a licensee.

Evidence of RKO's alleged antitrust activities and other corporate misconduct was also adduced on a broader scope in hearings in the Boston proceeding, which began in 1971, to determine whether RKO should be disqualified as a licensee of WNAC–TV. On the basis of the more extensive evidence being pro-

duced in that proceeding, the Commission's Broadcast Bureau petitioned the Commission to reopen the record in the Los Angeles proceeding—which was then before the Commission on review of the Hearing Examiner's decision—to introduce the additional evidence.

By order of 2 August 1971[9] the Commission denied the Bureau's request, resolving instead to proceed expeditiously with its review. The Commission stated that the Boston proceeding was immaterial to its evaluation of the record in the Los Angeles proceeding and the Hearing Examiner's decision, and that it would become material only if the Commission reversed the Hearing Examiner and concluded on the basis of the Los Angeles record that RKO was the preferable applicant. The order provided that if the Commission did determine that RKO was to be preferred, award of its license would be subject to the outcome of the Boston proceeding and its revelations concerning the antitrust allegations.[10]

for a term of not to exceed three years in the case of broadcast licenses, and not to exceed five years in the case of other licenses, if the Commission finds that public interest, convenience, and necessity would be served thereby. . . . Pending any hearing and final decision on such an application and the disposition of any petition for rehearing pursuant to section 405 of this title, the Commission shall continue such license in effect. . . .

7. These practices were defined by the Commission as "threatening a supplier of a company with loss of further orders unless the supplier purchases goods or services from its customer or an affiliate of its customer." RKO General, Inc. (KHJ–TV), 31 F.C.C.2d 70, 71 n. 5 (1971).

Evidence of this alleged reciprocal dealing was also being considered in a civil antitrust action brought by the Department of Justice against General Tire, RKO, and another subsidiary of General Tire. United States v. The General Tire and Rubber Co., No. C–67–155 (N.D.Ohio, filed 2 Mar. 1967). The Review Board denied Fidelity's petition to enlarge the issues based on this action, with the caveat that the outcome of the Los Angeles proceeding could be made subject to whatever accommodation the Commission deemed appropriate on the basis of the result of the civil action. 8 F.C.C.2d 632, 636 (1967). That action was terminated by con-

sent judgment on 22 October 1970. On Fidelity's petition, the Commission took official notice of that judgment. FCC 71–970 (20 Sept. 1971).

8. Although Fidelity had attempted to have the record opened for a broader investigation of these practices, the Hearing Examiner limited the inquiry to evidence of anti-competitive activity "patently germane to RKO's stewardship of KHJ–TV. . . ." FCC 68M–394 (11 Mar. 1968).

While not amplifying the scope of the evidence adducible under the anticompetitive trade practices issue, the Commission subsequently enlarged the issues in the Los Angeles proceeding "[t]o determine, in light of the evidence adduced with respect to the preceding issues, whether RKO General, Inc. should be disqualified or, if not, whether a comparative demerit should be assessed against it in this proceeding." FCC 68–892, 14 P & F Radio Reg.2d 90, 92 (1968).

9. 31 F.C.C.2d 70 (1971).

10. *Id.* at 73–74. In pertinent part, the order reads:

10. We see no purpose in reopening the Los Angeles proceeding either for the introduction of evidence concerning alleged antitrust activities of General Tire and RKO or for a hearing on the issues added by the Review Board. On the basis of his comparison of the qualifications of the

It is significant to note for purposes of the motion before us that the Commission's 1971 order neither consolidated the two proceedings, nor permitted the record to be reopened for receiving the antitrust evidence from the Boston proceeding, though it did permit Fidelity to participate in that aspect of the Boston proceeding which pertained to RKO's alleged antitrust activity.[11]

In August 1971 RKO filed with the Commission, and subsequently supplemented, a petition to dismiss Fidelity's application or, alternatively, to enlarge the issues and reopen the record for further hearings, alleging that Fidelity had failed timely to report to the Commission changes in its corporate structure and acquisition of certain newspaper interests by one of its stockholders. On 28 September 1971 the Commission ordered that the issue be addressed at oral argument, which was held on 12 October 1971, over two years after the Hearing Examiner's decision. The Commission did not act on RKO's petition until two years after argument, when it dismissed the petition as moot.[12]

On 22 March 1973, nearly two years after the Commission's announced decision (2 August 1971) to proceed expeditiously with its review of the Hearing Examiner's decision, Fidelity filed in this court a petition for writ of mandamus to compel the Commission to reach a final decision. The sole explanation for the delay offered by the Commission was that it was simply adhering to the procedure it had announced in its order of 2 August 1971. As the Commission then interpreted that order, it had decided to await the termination of the Bos-

two applicants, the Examiner recommended against a renewal of the KHJ–TV license and in favor of a grant of Fidelity's application for a construction permit. Only if the Examiner committed errors of decisional significance in his comparative analysis and the Commission contemplates a grant of the RKO renewal application will the additional evidence sought to be introduced be material to a decision on the KHJ–TV renewal application. In these circumstances we believe that the better and more expedient procedure is as follows:

(a) Deny the Bureau's motion to reopen and proceed with the disposition of the Los Angeles proceeding on the basis of the evidence now of record.

(b) Grant the request of the parties for oral argument and hold oral argument on the exceptions in Dockets Nos. 16679–16680 at the time and place scheduled herein.

(c) Make Fidelity a party to the Boston proceeding but limit its participation to matters pertaining to RKO's character qualifications to be a Commission licensee either by reason of antitrust or anticompetitive activities or by reason of the alleged conduct which forms the basis for the issues added by the Review Board. In this connection we note that counsel which represents Fidelity in the Los Angeles proceeding also represents Community Broadcasting of Boston, Inc., a competing applicant in the Boston case; and the same firm of attorneys represents RKO in both proceedings. Therefore, we believe that neither RKO nor Fidelity, nor in fact any other party to these proceedings, will be prejudiced or inconvenienced by the procedure herein adopted.

(d) In the event the Commission determines that on a comparative basis KHJ–TV is the preferable applicant, defer the issuance of a final decision until the conclusion of the Boston adjudicatory proceeding in Dockets Nos. 18759–18761, and thereafter take such action as appears to be appropriate in light of the evidence introduced in, and the outcome of, the Boston proceeding.

*The procedure adopted herein will enable the Commission to proceed with the Los Angeles matter and bring it to a conclusion* with no risk to the public interest. If Fidelity should be found to be the better applicant, RKO's character qualification would become irrelevant and the successful applicant can proceed to put its authorized broadcast facility into operation without awaiting the outcome of the Boston case. On the other hand, *if on the present record RKO should be found to be the better applicant on a comparative basis, the award of a renewal of license may be held in abeyance until the pertinent evidence in the Boston proceeding is taken into account.*

*Id.* (emphasis added).

11. *Id.* at 75.

12. *See* note 19 *infra* and accompanying text. For a discussion of the Commission's dismissal of RKO's petition, see notes 34–36 *infra* and accompanying text.

ton proceeding before reviewing the Hearing Examiner's decision in the Los Angeles proceeding.

In view of the Commission's unequivocal statement in its 2 August order that it would "proceed with a *disposition* of the Los Angeles proceeding on the basis of the evidence *now* of record,"[13] and that the Boston proceeding would be *relevant only if*, after review of that record, the Commission reversed the Hearing Examiner on the merits,[14] this court concluded in an order released 11 June 1973[15] that the Commission's decision in the Los Angeles proceeding had been unreasonably delayed in contravention of section 10(e) of the Administrative Procedure Act.[16] But, "being satisfied that [the Commission would] act in accord with" that finding "without the necessity of the issuance of a writ of mandamus" to compel a final decision, the court ordered the petition held in abeyance for 30 days during which time the Commission was directed to file a statement of the action it had taken in the matter.

Exactly 30 days later, the Commission represented to the court that on 2 July it had "instructed the staff to prepare a written decision as expeditiously as possible." On the basis of that representation, and in the belief that it was made in good faith and that the Commission intended to fulfill its directive, the court denied the petition for writ of mandamus on 20 September 1973, "without prejudice to its renewal in the event a *final decision* on petitioner's application is further unreasonably delayed" (emphasis added).

Two months later, when it had been in excess of four years since the Hearing Examiner's initial decision, over five months since this court's determination that the final decision had been unreasonably delayed, and more than four months from the date the Commission ordered its staff to prepare a decision, Fidelity renewed its petition for writ of mandamus in accordance with this court's order of 20 September 1973. On 10 December, as a ruling on Fidelity's petition was about to issue, the court received a letter from Fidelity's counsel notifying the court that the Commission, by a three-to-two vote, rendered a decision reversing the Hearing Examiner.[17] The Commission concluded that RKO was the preferable applicant on a comparative basis,[18] and in view of that conclusion dismissed as moot RKO's petition to dismiss Fidelity's application.[19] Commissioner Reid joined in the decision by Commissioner Robert E. Lee. Chairman Burch, who has since left the Commission, concurred in the result only. Commissioners Johnson and H. Rex Lee, who have since resigned, vigorously dissented.[20]

Fidelity's notification, a copy of which was sent to counsel for the Commission and for RKO, requested the court to dismiss its renewed petition for writ of mandamus "as moot" in light of the 6 December order. The Commission did not respond in any fashion to the notification or the request to dismiss. Accordingly, the court on 21 December dismissed the renewed petition for mandamus as moot. The Commission now contends, in the instant motion filed two months after the petition for review was filed by Fidelity, that its 6 December order is *not a final decision* and therefore is not properly before the court at this time.

---

13. Note 10 *supra* (emphasis added).

14. *Id.*

15. Fidelity Television, Inc. v. FCC, No. 73–1313 (unpublished order).

16. 5 U.S.C. § 706(1). This provision empowers the court having jurisdiction to review a particular agency's orders to "compel agency action unlawfully withheld or unreasonably delayed."

17. 44 F.C.C.2d 123 (1973).

18. *Id.* at 137 ¶ 37 and at 138 ¶ 39(d).

19. *Id.* at 138 ¶ 39(a).

20. Commissioners Wiley and Hooks did not participate in the order.

## II. FINALITY OF THE ORDER OF 6 DECEMBER 1973

This court's jurisdiction over decisions by the Commission is controlled by section 402(b)(1) of the Federal Communications Act of 1934, as amended,[21] section 10 of the Administrative Procedure Act,[22] and judicial interpretations of these statutes. Section 402(b)(1) provides:

> Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:
>
> (1) By any applicant for a construction permit or station license, whose application is denied by the Commission.

Under section 10, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . ."

The 6 December order reversed the Hearing Examiner's conclusion that on a comparative basis Fidelity should be preferred over RKO, the only other applicant in the Los Angeles proceeding. Yet the Commission steadfastly maintains that the decision is not presently reviewable because it did not finally "deny" Fidelity's application within the meaning of section 402(b)(1). Counsel point to the concluding paragraph of the 6 December order which reads:

> [It is ordered:]
>
> (d) That the application of RKO General, Inc. . . . IS DEEMED TO BE GRANTED, and that the application of Fideli-

ty Television, Inc. . . . IS DEEMED TO BE DENIED, subject to whatever action may be deemed appropriate following resolution of the matters in [the Boston proceeding].[23]

To bolster their position, counsel include as part of their motion the affidavit of Vincent J. Mullins, Secretary of the Commission, which asserts, *inter alia*, that "[n]o license has been issued, on condition or otherwise." Additionally, they argue that the Commission could not finally grant RKO's application because of the outstanding antitrust issues in the Boston proceeding which could lead to disqualification of or a comparative demerit against RKO with respect to its operation of KHJ–TV. Nor could the Commission grant Fidelity's application, it is urged, where RKO's petition to reject Fidelity's application, which alleged misconduct on the part of Fidelity, was dismissed as moot.

■ The principle of finality in administrative law is not, however, governed by the administrative agency's characterization of its action, but rather by a realistic assessment of the nature and effect of the order sought to be reviewed.[24] Hence, "a final order need not necessarily be the very last order" in an agency proceeding,[25] but rather, is final for purposes of judicial review when it "imposes[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a consummation of the administrative process."[26] The Commission's appraisal of its order ignores these principles and the immediate and continuing impact of the order on Fidelity.

21. 47 U.S.C. § 402(b)(1) (1970).

22. 5 U.S.C. § 704 (1970).

23. 44 F.C.C.2d at 138 (emphasis original).

24. Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 297, 211 F.2d 51, 55, cert. denied, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954).

25. *Id.*; *accord*, Goodman v. Public Service Comm'n, 151 U.S.App.D.C. 321, 323, 467 F. 2d 375, 377 (1972); Bethesda-Chevy Chase

Broadcasters, Inc. v. FCC, 128 U.S.App.D.C. 185, 186, 385 F.2d 967, 968 (1967) (dictum).

26. Chicago & Southern Air Lines v. Waterman Steamship Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948); Isbrandtsen Co. v. United States, note 24 *supra*, 93 U.S.App.D.C. at 297, 211 F.2d at 55. *See generally* Pacific Gas & Electric Co. v. FPC, 164 U.S.App.D.C. ——, at ——, 506 F.2d 33, at 47–48 (1974).

A. *Indicia of Finality Within the Order Itself and Its Historical Context*

 That the 6 December order is final for purposes of judicial review is demonstrated on the face of the order itself and as read in light of past orders of this court and the Commission in this case.

As we noted earlier,[27] by its order of 2 August 1971, the Commission elected to *"proceed to the disposition* of the Los Angeles proceeding on the basis of the evidence" produced in that proceeding, *rather than* reopen the record or consolidate the case with the Boston proceeding for a more comprehensive inquiry into the allegations of RKO's antitrust activities. The Commission *now* contends that it is *the lack of such an expanded inquiry* in the Los Angeles proceeding which renders the 6 December order inappropriate for judicial review. However, *it is clear that the 2 August order contemplated a final evaluation of the Hearing Examiner's decision,* and that the outcome of the Boston proceeding would act only as a possible condition subsequent in the event the Commission reversed the Hearing Examiner's award to Fidelity. The merit of Fidelity's application simply was never made contingent in any manner on the Boston proceeding.

The 6 December order itself purports to be a complete review of the Hearing Examiner's decision in favor of Fidelity. The Commission adopted his findings of facts, with certain modifications, but reversed his conclusions.[28] Except for the question of general anticompetitive activity being investigated in the Boston

proceeding and the questions raised by RKO's petition to dismiss and rejected by the Commission as moot, all the comparative qualifications of RKO and Fidelity were evaluated at length by the Hearing Examiner and on review by the Commission,[29] which concluded on the basis of this extensive evaluation that RKO was the preferred applicant. The finality of that determination is manifest in the 6 December order.[30] If the Commission intended merely an interim appraisal of the competing applications on the basis of the Los Angeles record, we are at a loss to decipher why the Commission undertook such a thorough review of each applicant's qualifications.

Moreover, an *interim decision* is not what was involved in the two mandamus proceedings. The Commission was confronted by two decisions of this court wherein we unequivocally concluded that a *final order* in the Los Angeles proceeding *must issue,* but declined to so order the Commission on the basis of its representations that a final decision was forthcoming.[31] *The 6 December Commission order either expressed the Commission's purported effort to comply with this court's implied directives,[32] or was a deliberate effort to deceive this court or evade its decision.*

Fidelity interpreted the 6 December order as final. As we noted earlier,[33] in November 1973, four months after the Commission's representation that it would reach an expeditious decision in the Los Angeles proceeding, Fidelity renewed its efforts to compel a final decision. When it learned that the 6 December order had issued, it felt that the

27. Notes 9 and 10 *supra* and accompanying text.

28. 44 F.C.C.2d at 125 n. 4.

29. *Id.* at 128–37 ¶¶ 13–37.

30. *Id.* at 137 ¶ 37, which reads in part:
Since Fidelity has had a full opportunity to demonstrate that its proposal will better serve the public interest, and since the record is clear that Fidelity has not demonstrated that it will in fact provide a better service than RKO, we are convinced, for the reasons set forth above,

that RKO's renewal application for KHJ–TV must be preferred.

31. *See* pp. ——, —— of 163 U.S.App.D.C., pp. 446–447 of 502 F.2d *supra.*

32. The actual expression of the Commission's intent to comply with this court's orders is somewhat oblique. *Compare* 44 F.C.C.2d at 127 ¶ 8 *with id.* at 128 ¶ 11 and at 129 n. 17.

33. P. —— of 163 U.S.App.D.C., p. 447 of 502 F.2d *supra.*

relief it sought—release of a final order —had been provided by the Commission, and accordingly requested the court to dismiss its renewed petition for writ of mandamus as moot. Had the Commission felt that the order was *not* a final determination, we fail to perceive why the Commission did not respond to this request. Regarding the Commission's silence as indicative of its concurrence, we dismissed the petition as moot. The Commission's attempt at this late stage to hinder Fidelity's efforts to obtain judicial review on the ground that the order is not final is perturbing, to say the least.

Another aspect of the 6 December order which reveals its finality is its disposition of RKO's petition to dismiss Fidelity's application for a license as moot. If the 6 December order was not a final resolution of the Los Angeles proceeding, the Commission's rationale in dismissing RKO's petition escapes us, since such a dismissal is logical only if a final decision on the basis of that record had been made. The order suggests that absent this court's past orders in this case, the Commission would "ordinarily enlarge the issues and remand [the record to the Hearing Examiner] for a further hearing to determine all of the facts surrounding [RKO's allegations] and their impact upon both the basic and comparative qualifications of Fidelity before considering a grant of its application." [34] Yet the Commission sat on RKO's petition for over two years before acting. The Commission has never explained to this court why it did not attempt a further inquiry during that time. Thus, it cannot at this point rely on the absence of a complete record on that issue as grounds for dismissing this appeal. Furthermore, although RKO's petition was dismissed by the Commission "as moot," according to the 6 December order the Commission *did* consider the allegations contained in the petition and addressed during argument on 12 October 1971 in its evaluation of Fidelity's qualifications. [35] As Commissioner H. Rex Lee demurred in his dissent to the 6 December order, the Commission "cannot reject or dismiss requests for hearing issues and then use the questions raised by the requests against the applicant in the comparative evaluation." [36]

### B. *Impact on Fidelity*

The impact of the 6 December order on Fidelity buttresses our conclusion that the order is presently reviewable. Even if the order "deeming" the denial of Fidelity's application is eventually reversed in the event RKO's award is vacated as a result of the Boston proceeding, Fidelity has felt and will continue to experience for some time the consequences of the 6 December order. Five years ago the Hearing Examiner concluded that Fidelity's application should be granted. However, RKO was permitted to continue its operation of KHJ–TV pending appeal to the Commission. That operation will continue at least until the Boston proceeding is terminated.

Therefore, the fact that no award has actually been granted RKO is irrelevant since, under the Commission's characterization of the 6 December order, an award is presently unnecessary. [37] Inas-

---

34. 44 F.C.C.2d at 127–28 ¶ 10.

35. While the Commission disapproved of proceeding with its review of the Hearing Examiner's decision without a new inquiry into RKO's allegations, it clearly did consider the evidence which had been adduced on the question:

> [W]hile we might have preferred to base our Decision [on RKO's petition] on a more complete record in an ordinary case, we believe the circumstances here require us to go forward on the present record. *Id.* at 128 ¶ 11.

36. *Id.* at 147–48.

37. *See* note 6 *supra* and accompanying text.
 This factor and the fact that the Commission has undertaken a decisive review of the Hearing Examiner's decision on the basis of a complete record distinguish the *Johnston* and *Pauley* decisions on which the Commission relies in its motion. In Johnston Broadcasting Co. v. FCC, 88 U.S.App.D.C. 90, 187 F.2d 202 (1950), a Commission order denying a petition by Johnston for a final grant of a construction permit was not reviewable as a final denial because the

much as the Boston proceeding *began six years after* the Los Angeles proceeding, and involves a considerably broader investigation, it is unlikely that the Boston proceeding will terminate in the near future.[38] Until that time, Fidelity is denied the right to construct its station to which the Hearing Examiner concluded it was entitled. Hence, the effect of the 6 December order will be felt in a concrete way for quite some time.

## C. *Effect of Review on the Administrative Process*

The 6 December order may not be the very last order issued by the Commission in the Los Angeles proceeding if RKO ultimately loses its license for KHJ–TV as a result of the Boston proceeding. But as we have endeavored to emphasize, this eventuality does not defeat review at this time. The order was promulgated at the highest level of the Commission after complete evaluation of the entire evidence produced in a proceeding which, as early as 1971, the Commission decided to isolate from the

Boston proceeding. That the only applicants involved in the Los Angeles proceeding were RKO and Fidelity, whose comparative qualifications have now been resolved on the basis of the complete record compiled in that proceeding, is persuasive of the order's finality. *There simply will be no further orders based on that record.*

The Commission nevertheless persists in its view that the contingency of the Boston proceeding renders the 6 December order an interim, and hence unreviewable, decision. While it is true that an agency decision is inappropriate for judicial scrutiny where the court's intervention would "disrupt the orderly process of adjudication," [39] an analysis of the alternatives remaining to the Commission belie the Commission's asserted fears in this case.

In response to our question at oral argument on this motion,[40] counsel for the Commission assured the court that if, as a result of the Boston proceeding, the 6 December award to RKO for renewal of KHJ–TV were vacated, and if Fidelity

Commission had determined that the application should be considered in a comparative hearing. In Pauley v. FCC, 86 U.S.App.D.C. 294, 181 F.2d 292 (1950), where the Commission had scheduled several applications for comparative hearings, the severance of one application until the applicant's eligibility was evaluated was held unreviewable. In both of these cases, the Commission had not completed the comparative hearing scheduled in the proceeding at issue. In the case at bar, comparative hearings on RKO's and Fidelity's competing applications were *concluded in 1969 and a decision by the* Commission on the merits of the Hearing Examiner's award has issued.

38. Counsel for the Commission asserted at oral argument on this motion that the Boston proceeding would be completed within one year of the Hearing Examiner's decision in that proceeding which, in a subsequent paper filed with the court, the Commission announced was released on 21 June 1974. While ordinarily we would not question this assertion, we cannot ignore the record of similar assertions made and subsequently abandoned by the Commission in this case. *See* note 10 and pp. —— – —— of 163 U.S. App.D.C., pp. 446–447 of 502 F.2d *supra*. The unlikelihood that a final decision in the

Boston proceeding would issue in less time than was necessary to secure a final decision in the Los Angeles proceeding is compounded by the fact that the scope of the inquiry in the Boston proceeding is considerably broader with respect to the allegations of antitrust activity than that in the Los Angeles proceeding, *see* p. —— of 163 U.S.App.D.C., p. 445 of 502 F.2d *supra*, and by virtue of the fact that three applicants are under consideration in the Boston proceeding, rather than only two as in this case.

39. National Automatic Laundry & Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 286, 443 F.2d 689, 701 (1971), *quoting* Port of Boston Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S. Ct. 203, 27 L.Ed.2d 203 (1970).

40. By order of 17 May 1974, which scheduled oral argument on this motion, the court directed counsel for the Commission to

clarify the meaning of that part of the order of December 6, 1973, . . . which "deems" the application filed by [Fidelity] for a construction permit to be denied; specifically, in what status would [Fidelity's] application be if, as a result of the [Boston] proceeding . . ., the December 6 order is vacated by the [Commission].

were not otherwise disqualified. Fidelity, the only remaining applicant, would be granted a construction permit for Channel 9. Accepting this representation as true, and while we need not speculate at this stage exactly how the court may ultimately dispose of the appeal, we foresee the following eventualities, none of which would be disturbed by review of the 6 December order at this time.

First, in the event the court affirms the Commission and no decisive evidence of anticompetitive activity on the part of RKO is developed in the Boston proceeding, RKO preserves its license for KHJ–TV. Second, even if the court affirms the Commission and the revelations of the Boston proceeding subsequently compel the Commission to vacate the 6 December order, then Fidelity, as the lone survivor of the Los Angeles proceeding, will simply obtain its construction permit, if it is not otherwise disqualified, in accordance with the Commission's representations to this court at oral argument. Third, assuming the court reverses the 6 December decision that RKO is the preferable applicant on the basis of the Los Angeles record and remands the case to the Commission for further proceedings, then regardless of the outcome of the Boston proceeding, Fidelity, the only other contender in the Los Angeles proceeding, would obtain its license if it is not otherwise disqualified. These are the possibilities; none would cause disruption in the Commission's adjudication of the Los Angeles proceeding.

### III. CONCLUSION

The tardigrade pace taken by the Commission with respect to Fidelity's repeated efforts just to obtain a ruling has now consumed nine years. The Commission took over two years before hearing argument in October 1971 on exceptions to the Hearing Examiner's decision, and lingered another two years over the decision it resolved in 1971 to reach expeditiously, which it handed down only after prodding by this court. While assuring the court that it would reach the final decision we determined was mandatory, the Commission now maintains that the decision in fact is not final, since Fidelity's application is only "deemed" to be denied. We cannot condone the Commission's attempted eradication of Fidelity's right to judicial review simply by its coinage of the phrase "deem to deny," in apparent defiance of this court's determination that a final decision should issue.

Not only has the Commission procrastinated in ruling on Fidelity's application, but we find the Commission's arguments, its characterizations of events and the numerous orders involved in this case, and its various actions throughout this controversy to have been less than candid. It has been given the benefit of the doubt in the past by being afforded the opportunity to explain its delay and to reach a decision without being ordered to do so by this court, despite our finding that a final decision had been unreasonably delayed. The only explanation it ever offered for the delay was a patent misreading of its 2 August 1971 order.[41]

Despite the labels the Commission affixes to its various actions in this matter and the 6 December order, it is clear beyond peradventure that the December order is a final determination of Fidelity's application on the basis of the record in the Los Angeles proceeding. The Hearing Examiner considered that record sufficient for his decision. The Justice Department was persuaded by that record to recommend that RKO be disqualified. The Commission felt that the record was sufficient for it to review and overturn the Hearing Examiner's decision, without reopening the record or consolidating the case with the Boston proceeding. Hence, that record should be sufficient for this court to undertake a meaningful review. If the 6 December order cannot be sustained on the record compiled in the Los Angeles

41. *See* p. —— of 163 U.S.App.D.C., p. 446 of 502 F.2d *supra*.

proceeding, the sole basis for the order, it will fall.

The Commission's 6 December 1973 order will be set for full review on the merits in September 1974.

*So* ordered.