GENERAL MOTORS CORPORATION,
Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Cities Service Gas Company, et
al., Intervenors.

No. 78–1101.

United States Court of Appeals,
Tenth Circuit.

Argued July 17, 1979.

Decided Oct. 11, 1979.

Richard P. Noland, of Sutherland, Asbill & Brennan, Washington, D. C. (Edward J. Grenier, Jr., Robert W. Clark III, William H. Penniman, Laurel W. Glassman and Stephen E. Roth, Washington, D. C., with him on briefs), Otis M. Smith, Gen. Counsel, and Julius J. Hollis, General Motors Corp., Detroit, Mich., of counsel, for petitioner.

J. Paul Douglas, Federal Energy Regulatory Commission, Washington, D. C. (Robert R. Nordhaus, Gen. Counsel, and Howard E. Shapiro, Sol., Washington, D. C., with him on brief), for respondent.

Melvin Richter, of Littman, Richter, Wright & Talisman, P. C., Washington, D. C. (Dale A. Wright, Washington, D. C., Alfred O. Holl, Daniel R. Hopkins and Ron W. Fry, Oklahoma City, Okl., and Donal D. Guffey, Kansas City, Mo., on brief), for intervenors, Cities Service Gas Company and The Gas Service Company.

John M. Lilla, Sp. County Counselor, of Jackson & Sherman, P. C., Kansas City, Mo., for intervenors, Jackson County, Missouri and Home Builders Association of Greater Kansas City.

Don M. Jackson, Sp. County Counselor, Kansas City, Mo., and Stanley Christopher, Deputy County Counselor, Office of County Counselor, Kansas City, Mo., on brief, for intervenor, Jackson County, Missouri.

Morton L. Simons, of Simons & Simons, Washington, D. C., and William H. Reeder, Union Gas System, Inc., Independence, Kan., on brief, for intervenor, Union Gas System, Inc.

Before SETH, Chief Judge, and BREITENSTEIN and McKAY, Circuit Judges.

SETH, Chief Judge.

General Motors seeks a review of two orders entered by the Federal Energy Regulatory Commission, Docket No. RP75–62—Cities Service Gas Company. One is titled "Order Clarifying Prior Order" and dated December 12, 1977, and the second is a February 8, 1978, Order Denying Rehearing. The orders were entered during the course of hearings on the Cities Service Gas Company's plan for curtailment of service on its pipeline system. Other aspects of the plan and hearings before this court are referred to in *State Corporation Commission of Kansas, et al. v. F. E. R. C.* (10th Cir. No. 77–1781).

Cities Service Gas Company is a natural gas company under the Natural Gas Act (15 U.S.C. § 717a(6)), and sells gas for resale in Oklahoma, Kansas, Wyoming and other states. The petitioner General Motors has plants which use natural gas supplied by the Cities Service pipeline system to distributors Gas Service and Union Gas. The intervenors herein, other than Cities Service, are gas distribution companies, manufacturing plants, and Jackson County, Missouri.

The orders herein sought to be reviewed were directed to certain aspects of the curtailment plan which Cities Service proposed to meet a possible reduction in the amount of available natural gas. The plan provided for several categories of users which would each have a designated priority in the event curtailment of service became necessary.

The issue here as it relates to the several orders is a narrow one by reason of the limited scope and purpose of the orders. The basic issues are whether the orders are "final" to permit a review, and whether General Motors is "aggrieved" by the orders as contemplated by 15 U.S.C. § 717r(b).

We must hold that the orders challenged are not final orders to permit judicial review. In the several previous orders, the Commission stated that the issue of a growth limitation—restriction on new ser-

vice connections—on the Cities Service system had not been decided, and that the matter was reserved until the conclusion of evidentiary hearings on the issue.

The Commission in Opinion 805 held that the Cities Service plan for curtailment could not be approved because it did not include an "Index of Requirements." Thus it did not include a tabulation and analysis of the end-use requirements of the ultimate consumers for the pipeline system *as of January 1, 1978* (a prospective date). This requirement for an index was considered necessary to evaluate a curtailment plan based on stated priorities of the "users." In any event, the date referred to—January 1st—has become important in this appeal. Thus the fact that a particular date was referred to is significant.

This was followed by Opinion 805–A (August 2, 1977) which changed the apparent no-growth implications of 805 in response to a petition by Cities Service. Opinion 805–A directed the further hearings on the growth question, and more importantly it expressly permitted continued connections for high priority customers. As to this, it also recited: "Maintenance of the status quo will not adversely affect any party to, or issue in, this proceeding." The Commission in 805–A postponed the January 1st date of the 805 Opinion for the index of requirements.

This was followed by an order of September 30th wherein the Commission required the index be filed showing end-use requirements as of January 1st only "for information." In this order, the Commission repeated that it had not decided whether or not to use such an index. However, this order contained the critical admonition of caveat that the Commission "might decide to impose an index *as* of January 1st, and that the new connections made pending such a decision would be at the gas distributors' risk."

It is this caveat in the September 30th order which provoked the general reaction later referred to by the Commission as "uncertainty." The Commission *sua sponte* in an order entered December 12, 1977, referred to the "uncertainty" and to the "unilateral decisions by others which have placed a cloud over future building activities and have precipitated other actions which cannot be reconciled with the public interest." The Commission then stated that should an index of requirements be imposed, it would *not* be based on connections as of January 1st, but would be imposed prospectively only. General Motors objects to this change from a *possible* index based on January 1st conditions to a *possible* index based on conditions at the conclusion of pending hearings, or some prospective date then determined. General Motors applied for a rehearing, which was denied, and thus appeals from the December 12th order which in substance permitted customers to be added pending resolution of the index of requirements matter.

Thus it is the order which changed the date and permitted the addition of these connections which are assumed to be of high priority, or at least higher than General Motors, which it objects to. It also objects to the way in which the action was taken by the Commission. General Motors urges that it was not proper to enter the order *sua sponte* without additional hearings or additions to the record. Also, General Motors objects that the order made reference to matters outside the record, that is, events which took place after the original hearings in a community served. The "event" in the community was an announcement of a curtailment of home building by reason of the caveat in the September 30th order. This apparent curtailment or moratorium had been brought to the attention of the public and to the Commission. Some parties had sought rehearing on the ground such a moratorium would result or had resulted.

To summarize, the basic order concerned was one which disapproved the curtailment plan of Cities Service because it did not contain an index of requirements. The Commission did not decide whether or not such an index would be used, and set the matter down for hearing. The date for the index to be proposed for consideration was

stated—January 1st. The date was changed and the matter postponed, but in the caveat the Commission reserved the right to go back to the original date and this caused the reaction. This reservation was eliminated by order here challenged, and it was stated that should an index be adopted it would be as of some future date and of prospective application.

When the challenged orders are placed in context, it is apparent that they are a segment of ongoing hearings, and relate to a subject not yet decided. The orders must be held to be not final for the purpose of judicial review. *See* section 19(b) of the Natural Gas Act.

■ The core objection of General Motors to the change from January 1st to a future date, and to prospective application if an index be used, is to a specific matter and a definitely stated charge; but again it is in the context of ongoing consideration of the many facts of the curtailment plan. It was a change but such a change may be made on the basis of the existing record and may be made *sua sponte*. The Commission obviously thought that the use of January 1st with the caveat had been misinterpreted or was causing a reaction not anticipated which was not in the public interest. The Commission had the authority to make the change, and to use the procedure it did. An administrative agency has to be able to make such changes in these circumstances and need not depend on a party filing a request.

■ The question of whether or not an index will be adopted is the main subject of the hearing then ordered. This also would include the question as to the date to be used should one be adopted. The facts and the record generally will be developed. The matter of a date was thus still open in the hearing for participation by General Motors, and a review may be sought. The Commission has announced its view that an index would be of prospective application. This may be a prehearing indication of its position, but this is not a matter ripe for judicial review as here sought by General Motors.

■ When the January 1st date was removed from the prior order, the Commission reconsidered the balancing required on the load growth aspect of the prior order, and decided not to make any change during the course of the hearing. It reverted to the status quo ante. The reasons for the change were expressed sufficiently to explain the actions. *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206. This reconsideration did not require that new evidence be received. *Mobil Oil Corp. v. FPC,* 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72; *American Public Gas Ass'n v. FPC,* 186 U.S.App.D.C. 23, 567 F.2d 1016 (D.C. Cir.).

■ The Commission has the authority to determine when certain issues should be considered during the course of its hearings and to so arrange the sequence. *FPC v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533; *Federal Communications Comm'n v. Pottsville Broadcasting Co.,* 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656.

The court in *Louisiana Power & Light Co. v. FPC,* 526 F.2d 898 (5th Cir.), considered the curtailment plans and a rearrangement of the sequence in which issues would be heard. It also there considered the consequences of delay in which some would be heard and decided. The court there said: "The Commission possesses broad powers to structure the proceedings before it." The court referred to the complexity of the issues arising in curtailment proceedings. Thus the fact that new connections may be made above General Motors in the interim is not such a factor, on the record before us, to hold that the decision as to the course of the hearings and the balancing of the public interest was improper or beyond the authority of the Commission.

This is really a speculative matter as to the amounts of gas involved, and is speculative because an index had not been adopted. The Commission has not decided that it will adopt one. It is likely that it will, but this nevertheless *is* not a sufficient basis to challenge the balancing precipitated by the *de*

*facto* moratoriums. This again is within the discretion of the Commission in the scheduling of the hearing issues. General Motors had no vested interest in the original January 1st date.

We have carefully reexamined *Atlantic Rfg. Co. v. Public Service Comm'n,* 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312, and find nothing therein to lead us to a different result than here expressed. Here, the Commission determined that it did *not* have sufficient evidence to *decide* the load growth problem and remanded the matter for further hearings, especially for an index of requirements. *See Wisconsin v. FPC,* 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357. It is peculiarly within the discretion of the Commission to make such a determination. *See also Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681; *Blanco Oil Company v. FPC,* 158 U.S.App. D.C. 257, 485 F.2d 1036 (D.C. Cir.).

■ Again, it is apparent that the Commission may act in a pending case without a petition requesting action. The Commission has a continuing duty to consider the consequences of actions it has taken in on-going proceedings, and to make adjustments it considers to be in the public interest. The original record contained adequate data to support the Commission's change in the dates. The reference to outside matters was an explanation of why the change was then made—why the matter of load growth would be put off. The Commission had before it, as above mentioned, the petitions for rehearing by Cities Service and others which pointed out the unanticipated consequences of the September 30th order. The *Sweet* case was also pending against the Commission. (*R. L. Sweet Lumber Company v. FERC,* No. 77–0506–CV, W.D.Mo.) General Motors has demonstrated no prejudice from the use of this public information

The petition for review is DISMISSED.

McKAY, Circuit Judge, dissenting:

The substantive burden of this case is the allocation of available gas supplies in the event of shortages. The establishment of a policy which creates the possibility of reliance on future uncertain supplies became the focal point of the dispute. The Commission entered an order which it later came to believe had created uncertainty among the industries which are competing users and who inevitably will be allocated superior and inferior positions in that competition. The prevailing interpretation was one apparently hostile to the housing industry. The Commission, acting *sua sponte,* with no provision for notice and comment, entered an order "clarifying" its earlier order—a "clarification" which, at the very least, could be said to permit the housing industry to believe that it would be protected in times of shortage if it continued to expand. Without the development of a record, the Commission specifically eliminated from future consideration certain previously contemplated policy outcomes. The industrial petitioner, believing quite correctly that in times of shortage it would be placed in a position inferior to residential users, seeks review of that order.

I do not believe we can justify treating the decision with all of its practical bite as a nonfinal order merely because there is potential for some later revisions. "The principle of finality in administrative law is not . . . governed by the administrative agency's characterization of its action, but rather by a realistic assessment of the nature and effect of the order sought to be reviewed." *Fidelity Television, Inc. v. F. C. C.,* 163 U.S.App.D.C. 441, 446, 502 F.2d 443, 448 (D.C. Cir. 1974) (footnote omitted). Finality is determined "in a pragmatic way." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). We should not permit administrative agencies to insulate their arbitrary actions from judicial review by merely asserting the existence of an ongoing process. I do not believe it is "a realistic assessment" to conclude that an order which either encourages or permits substantial new gas user connection in times of recurring gas supply shortages would not do final and irrevocable damage to anyone who will be placed in an allocation position inferior to

those new hookups. I would review the order on the merits.