**SHEA, Michael P., Petitioner,**

v.

**OFFICE OF THRIFT SUPERVISION, Respondent.**

**No. 90–3605.**

United States Court of Appeals, Third Circuit.

On Petition to Modify, Terminate, and Set Aside an Order of the Office of Thrift Supervision Entered on Aug. 4, 1990.

Argued March 8, 1991.

Decided May 30, 1991.

---

**42**

Walder, Sondak, Berkeley & Brogan, P.A., James A. Plaisted (argued), David A. Schwartz, Roseland, N.J., for petitioner.

Office of Thrift Supervision, Office of the Sr. Deputy Chief Counsel, East, Faith S. Hochberg (argued), Steven A. Rosenberg, Jersey City, N.J., for respondent.

Before BECKER, NYGAARD, Circuit Judges, and GREEN, District Judge.*

OPINION OF THE COURT

CLIFFORD SCOTT GREEN, District Judge.

This case presents the petitioner's appeal of the August 24, 1990 order issued by the Office of Thrift Supervision (OTS) denying the petitioner's request to quash or modify the subpoenas *duces tecum* served in connection with a fraud investigation. The primary question is whether, without a final decision of the district court, this court has jurisdiction over this appeal pursuant to 12 U.S.C. § 1467a(j) of the Federal Home Loan Bank Act (FHLA), effective as of August 1989, or under the Administrative Procedures Act (APA) (5 U.S.C. § 704). The question of jurisdiction under 12 U.S.C. § 1467a(j) is an issue of first impression in this court. We conclude that this court does not have jurisdiction over the instant appeal under either provision.

I.

The petitioner, Michael Shea, was a director of Colonial Savings Bank ("Colonial Savings"), of Roselle Park, New Jersey, from 1986 to 1989. Colonial Savings was subject to the regulations of the OTS. As the OTS states, it is authorized to "exercise certain of the investigative and enforcement powers set forth in the Federal Deposit Insurance Act ("FDIA"), as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989

---

* Honorable Clifford Scott Green, United States District Judge for the Eastern District of Penn- sylvania, sitting by designation.

("FIRREA")." In October of 1989, the OTS served an investigative subpoena[1] upon the petitioner which required him to testify and to produce certain personal and corporate records in connection with an investigation of his activities while he was employed by Colonial Savings. After Shea refused to answer the subpoena, OTS filed an action in the district court on May 1, 1990 seeking enforcement of the subpoena. Shea filed a cross motion to quash the subpoena. The district court expressed concern that the subpoena was too broad, and suggested that the OTS withdraw the subpoena, redraft, and issue a new subpoena. After the parties agreed to this plan[2], the district court dismissed the enforcement proceeding without prejudice.

Instead of issuing one revised subpoena, on July 26, 1990, the OTS issued six separate investigative subpoenas *duces tecum* calling for the production of records in six different categories.[3] Shea and his counsel did not consider these subpoenas narrower than the first. In an attempt to exhaust his administrative remedies, Shea filed an application to quash or modify the six subpoenas with the OTS. The OTS denied Shea's application. App. at 178a. Shea then filed this petition to modify, terminate, or set aside the subpoenas *duces tecum* in the court of appeals pursuant to 12 U.S.C. § 1467a(j). At this point, OTS has not filed an action to enforce the subpoenas in the district court. The primary question before this court is whether, without a final decision by the district court, we have jurisdiction to consider this petition pursuant to the August 1989 revisions to 12 U.S.C. § 1467a(j) or under the Administrative Procedure Act, 5 U.S.C. § 704. Only if we determine that jurisdiction exists, can we consider the merits of this petition.

## II.

12 U.S.C. § 1467a(j) deals with the regulation of bank holding companies, and generally provides for the registration, examination, and if necessary, investigation of these organizations. In pertinent part 12 U.S.C. § 1467a(j) provides for judicial review of administrative orders in the following manner:

> Any party aggrieved by an order of the Director under this section may obtain a review of such order by filing in the court of appeals of the United States for the circuit in which the principal office of such party is located, ..., within 30 days after the date of service of such order, a written petition praying that the order of the Director be modified, terminated or set aside ... Upon filing of such petition, such court shall have jurisdiction, which upon the filing of the record shall be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order of the Director.

12 U.S.C. § 1467a(j) (Supp.1991).

Since no court has specifically considered whether the term "order" in 12 U.S.C. § 1467a(j) is limited to a "final order," this court must closely examine the statutory language, and the arguments made and authorities cited by each party.

On its face, the statutory language suggests that *any* order issued by the director is reviewable. The respondent contends that the OTS's declination to quash or modify the subpoenas does not constitute an "order" as that term is defined in the Administrative Procedure Act, 5 U.S.C. § 551(6).[4] "Orders" are generally issued as a result of an adjudicatory proceeding, and not as a result of an investigative proceeding such as the one which was held

---

1. An OTS investigative subpoena is not self enforcing. If the party fails to comply or contests the subpoena, then a court must decide whether or not it is enforceable. 12 U.S.C. § 1467a(g)(2).

2. OTS agreed to this plan, and Shea's counsel agreed to receive the revised subpoena.

3. The six categories covered the production of documents from the following sources: (1) Mi-chael P. Shea, personally (this subpoena included a demand for Mr. Shea's appearance at trial), and (2)—(6) five corporate entities that Mr. Shea was associated with.

4. 5 U.S.C. § 551(6) defines "order" as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing ..."

in the case at bar. *International Telephone & Telegraph Corp. v. Local 134, International Brotherhood of Electrical Workers*, 419 U.S. 428, 443–44, 95 S.Ct. 600, 610, 42 L.Ed.2d 558 (1975) (hereinafter *ITT v. Local 134*) (holding that the result of a hearing under § 10(k) of the National Labor Relations Act was not a final disposition with determinate consequences that fell within the definition of "order" under the APA, 5 U.S.C. § 551(6)). Further, the respondent notes that "the OTS's declination to quash the subpoenas lacks the requisite 'finality' to be an 'order,'" in part, because the decision did not have "determinate consequences" since the OTS would still have to bring an enforcement action in district court in order to act upon the subpoenas. See Respondent's Brief, at 21. Since "there is a strong presumption that judicial review is only available when an agency action becomes final" under the Supreme Court's decision in *Bell v. New Jersey*, 461 U.S. 773, 778, 103 S.Ct. 2187, 2191, 76 L.Ed.2d 312 (1983), we must determine the necessary elements of a final agency decision or final order.

 The petitioner contends that the order in question contains the requisite elements of a final disposition in accordance with the District of Columbia Circuit's decision in *Fidelity Television, Inc. v. Federal Communications Commission*, 502 F.2d 443, 448 (D.C.Cir.1974). In *Fidelity*, the court noted that "'a final order need not necessarily be the very last order in an agency proceeding, but rather, is final for purposes of judicial review when it impose[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a consummation of the administrative process.'" *Id.* (quoting *Chicago & Southern Airlines v. Waterman Steamship Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568

(1948)). (emphasis added). The court in *Fidelity* relied on its earlier holding in *Isbrandtsen v. United States*, 211 F.2d 51, 55–56 (D.C.Cir.1954), *cert. denied*, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954) [5], for the proposition that "the principle of finality in administrative law is not, ..., governed by the administrative agency's characterization of its action, but rather by a realistic assessment of the nature and effect of the order sought to be reviewed." *Fidelity*, 502 F.2d at 448. This effects-driven approach to finality was adopted by this court in *Lam Man Chi v. Bouchard*, 314 F.2d 664, 670 (3d Cir.1963).[6] In *Lam Man Chi*, this court stated that "'whether or not [an administrative order] is final' is ascertained by a 'realistic appraisal of the consequences of such action.'" *Id.* (quoting *Isbrandtsen*, 211 F.2d at 55). The policy underlying a court's consideration of the consequences of an action as evidence of finality was clearly stated in *Isbrandtsen*, 211 F.2d at 55 (quoting *Columbia Broadcasting System v. United States*, 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563 (1942)).

> The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control.

We agree that, in this Circuit, the finality of a disposition is determined by its consequences. *Lam Man Chi*, 314 F.2d at 670. *See also, City of Jersey City v. Hodel*, 714 F.Supp. 126, 131 (D.N.J.1989) (holding that determinations made by the National Parks Service regarding construction of a marina

---

**5.** In *ITT v. Local 134*, 419 U.S. at 443, 95 S.Ct. at 610, the Supreme Court noted the following: "[W]e think that when Congress defined 'order' in terms of a 'final disposition,' it required that 'final disposition' to have some determinate consequences for the party to the proceeding."

**6.** In *Lam Man Chi*, this court considered an appeal by three "illegal aliens" whose motion for a preliminary injunction against deportation

had been denied by the United States District Court for the District of New Jersey. 314 F.2d at 674. (The original deportation order was issued by the Director of the Immigration and Naturalization Service, and an appeal was taken to the District Court). This court vacated the district court's order denying the injunction, and remanded for findings of fact, and conclusions of law regarding plaintiff's deportation.

did not constitute final agency action which was reviewable by the district court because the results of such decision will not result in "concrete action" against the plaintiffs at this stage). In addition, our review of the definition provided in the APA and the above cited case law leads this court to the conclusion that the term "order" in 12 U.S.C. § 1467a(j) requires that an action have a determinative effect so that it may be properly characterized as a "final order."

### III.

■ Based on the foregoing, in this case we must consider the consequences of OTS's denial of petitioner's application to quash or modify, which left in place the subpoenas issued by OTS. In accordance with the District of Columbia Circuit's decision in *Fidelity*, this court may also consider whether the OTS's decision "imposes an obligation" or "denies a right." We must consider these consequences in order to determine whether the OTS action constituted a final reviewable order.

Our analysis begins with the general proposition that administrative subpoenas are not self-enforcing. *See, Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir.1980)[7] (holding that an FTC subpoena is not self-enforcing), 3 J. Stein, G. Mitchell and B. Mezines, Administrative Law § 21.02[1] (1985). The subpoenaed party can contest the subpoena by filing a motion to quash or modify. If the party otherwise refuses to comply, only the OTS (or any agency) may file an enforcement action in the district court. At this point, Shea can really do nothing.

[T]hat one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey.

*United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971). Referring to an OSHA inspection warrant this court said,

A denial of a motion to quash an inspection warrant should no more be appealable than is a denial of a motion to quash a grand jury subpoena, which has long been held to be not final and therefore not appealable. 'Such an order generally lacks finality because it leaves to the subpoenaed party the decision whether or not to comply with the subpoena; and if that party does not comply it leaves to the other party the decision whether or not it is worthwhile to seek a citation for contempt in order to compel disclosure.'

*Babcock and Wilcox Co. v. Marshall*, 610 F.2d 1128, 1133 (3d Cir.1979) (quoting, *In Re: Grand Jury Subpoena for New York State Income Tax Records*, 607 F.2d 566, 569 (2d Cir.1979).

■ "Since agencies lack the power to enforce their own subpoenas, they must apply to the district courts for enforcement. Only then may substantive or procedural objections to the subpoena be raised for judicial determination." 3 J. Stein, G. Mitchell and B. Mezines, Administrative Law § 21.01[1] at 21-4. The subpoenaed party who, in good faith, fails to comply will not be subject to prosecution or contempt for said failure even where statutory language allows a penalty. *Reisman v. Caplin*, 375 U.S. 440, 445–46, 84 S.Ct. 508, 511–12, 11 L.Ed.2d 459 (1964).[8] As a re-

---

**7.** In *Wearly*, the court held that a Federal Trade Commission (FTC) subpoena was not, in itself, a final enforceable order. Although this court did not specifically consider an appeal under 12 U.S.C. § 1467a(j) in *Wearly*, the court noted that "[r]esort to a court by recipients of investigative subpoenas before an action for enforcement has commenced is generally disfavored." *Wearly*, 616 F.2d at 665.

**8.** In *Reisman* the Supreme Court considered the appeal of taxpayers' attorneys who sought injunctive relief from an investigative subpoena which required former employees of the attorneys to testify and to produce reports. The Court of Appeals for the District of Columbia Circuit affirmed the judgment of the district court which dismissed the suit. The Supreme Court held that the attorneys would not be subject to a contempt sanction for refusal to comply since an enforcement proceeding had not taken place. The plaintiffs would be able to present their reasons for noncompliance at the enforcement proceeding, and would not be subject to sanctions before that time. 375 U.S. at 445–46, 84 S.Ct. at 511–12.

sult, prior to the filing of an action to enforce an administrative subpoena, a party upon whom a subpoena has been served faces only the threat of action. The subpoenaed party faces actual harm only after a successful enforcement action has been brought and, as a result of such action, the subpoenaed party has been ordered to comply.[9] It is at that time, and not before, that the party may have an order reviewed by this court. In the case at bar, since no enforcement action had been taken at the time the petitioner filed his action in this court, we hold that the agency's denial of petitioner's motion to quash did not impose any additional obligation upon the petitioner, nor expose him to any threat of harm since OTS was powerless itself to enforce, and only the district court could exercise its power to punish. Therefore, we hold that this court does not have jurisdiction to review the agency's refusal to quash or modify the subpoena.

## IV.

The petitioner also claims that this court has jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. § 704 which provides for judicial review of an "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court ..." 5 U.S.C. § 704. Although § 1467a(j) authorizes review, for the reasons stated above, the order issued by the OTS in this case, is not a final disposition as required by 5 U.S.C. § 704.[10]

## V.

Since we have determined that this court does not have jurisdiction to consider this appeal under 12 U.S.C. § 1467a(j) or under 5 U.S.C. § 704, we need not reach the ripe-ness issue presented by the respondent, and we can not consider the merits of the petition before us.

---

9. A court's denial of a motion to quash a subpoena may also result in a formal order requiring the plaintiff to comply with the subpoena. In contrast to the right of appeal which arises from a successful enforcement action, a subpoenaed party does not have a right of appeal from the denial of a motion to quash. *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971) ("one to whom a subpoena is issued may not appeal the denial of a motion to quash that subpoena but must either obey its command or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey").

10. The final order of the district court in an enforcement proceeding is subject to review by this court pursuant to 28 U.S.C. § 1291. *See, e.g., Dole v. Trinity Industries, Inc.,* 904 F.2d 867, 870 (3d Cir.1990).